## MONT BRIDGES V. THE STATE.

No. 17598.   Delivered May 22, 1935.

The opinion states the case.

*Tom Garrard,* of Tahoka, and *T. L. Price,* of Post, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder, and his punishment was assessed at confinement in the State penitentiary for a term of 50 years.

The record shows that on the night of the first day of July,

1934, Jay Donaldson and Bertha Gordon were killed on the highway at a point approximately 3 miles east from the town of Post in Garza County, Texas. The State's testimony shows that on or about the last day of March or the first day of April the appellant came to the home of Mrs. Susie Gordon and said that Dr. Kitchen, Ed Fraser, and Jay Donaldson had to die as they knew too much about his counterfeiting business; that on the afternoon of the day of the homicide appellant was again at the Gordon home. While talking to Mrs. Gordon, Jay Donaldson and Bertha Gordon came into the house. The appellant and Donaldson went to the back bedroom where they had a conversation and upon their return appellant said they were going to get some gas and would be back in a few minutes. The State's testimony further shows that the appellant, Jay Donaldson, and Bertha Gordon left the Gordon home, went to Post, where they secured some ice, and then proceeded to the home of Charles Miller some five miles from said town where they drank some home brew. While engaged in the drinking of beer an argument arose between appellant and Donaldson which developed into a quarrel during which time appellant said, "I have a good mind to kill every damned one of you," at the same time drawing a gun from his hip pocket, whereupon Bertha Gordon said, "I know you can but do not do it here. Please do not do it here." Mr. Miller then requested them to leave. They proceeded from the room to their car, entered it, and drove away, during which time the argument continued. About 15 or 20 minutes after they left the Miller home, Miller heard four shots. The appellant, Jay Donaldson, and Bertha Gordon were seen on the highway near the point where the dead bodies of Jay Donaldson and Bertha Gordon were subsequently found, at which time appellant was sitting on the left hand side and driving the car. At about 9:30 o'clock on the night of July 1, appellant appeared at a restaurant in the town of Post near the Palace theater and said to J. C. Combs and Cameron Justice: "Hey, boys, I want you to make me a witness in a murder case," and when asked where it happened he said, "About three miles out on the highway," and when they asked him who it was he said, "Jay Donaldson and the Gordon girl," and when they asked him how it happened, he said, "Jay killed her and then killed himself." Appellant requested that they summon a doctor and the sheriff, which they did. He subsequently made the statement that he, Donaldson, and Bertha Gordon were coming towards town and a car came up to them; that they got to

arguing and Donaldson grabbed appellant's pistol and attempted to get out of the car, when a man from the other car grabbed him and during the scuffle for the gun both Donaldson and Bertha Gordon were killed; that their bodies were lying on the highway about three miles out from Post. The parties who went to the scene of the homicide found the body of Donaldson lying on the ground with the head to the northeast and the feet to the southwest, and the body of Bertha Gordon was lying at right angles with her feet between Donaldson's knees. Her clothes were not disturbed. A 45 caliber Colt single action six shooter belonging to appellant was lying in between the dead bodies. The gun showed that four chambers had been discharged. An examination of the bodies disclosed that Donaldson was shot in the left side, the bullet emerging on the right side of his body, and he was also shot on the side of the cheek, the bullet entering near the mouth and emerging near the left ear; this wound was but a flesh wound. Bertha Gordon was shot twice in the shoulder, the bullets ranging downward. Appellant's car disclosed that one bullet had struck a bow on the right hand side of the car from the inside, passing on through to the outside. There was also a bullet hole in the door on the right hand side of the car and a bullet was found back of the seat in the right hand corner and blood was found on the seat of the car. The uncontradicted testimony showed that some boys passed the appellant, Jay Donaldson and Bertha Gordon on the highway near the point where the dead bodies were found; that after they had passed the appellant's car it stopped and the lights went out. The appellant did not testify at the trial but the testimony adduced by him was to the effect that he and Donaldson were friends and had been friends; that after the homicide when he appeared at Post he seemed to be under the influence of intoxicating liquor and was excited, nervous and scared. There was also testimony to the effect that a car had come up a lane, and entered the main highway somewhere within less than two and one-half miles of where the dead bodies were found. The tracks of the car indicated that it went down the lane and turned around and came back. In the car tracks out in the lane there were human tracks going south toward the highway. The car has a peculiar casing. The foot tracks went within about 15 yards of the highway and turned east through the pasture. Those foot tracks were going towards the bodies. There was also some testimony that car lights were observed due north of the bodies which were possibly

on the spur road. The lights of the car were across the pasture from the bodies, quite a distance away.

By bills of exception Nos. 1 and 2 appellant complains of the action of the trial court in permitting the State to prove by Mrs. Gordon that about the latter part of March or the first part of April, 1934, the appellant came to her house and said, "The G—— d—— s—— o— b—— all got to die." Bertha Gordon, her daughter, asked him "Who?", and he replied, "Dr. Kitchen, Ed Fraser, and Jay Donaldson because they know too much about my counterfeiting business." Appellant's objection to said testimony was that whatever he may have said about, of, or concerning Dr. Kitchen and Ed Fraser was immaterial and irrelevant to any issue in the case and was prejudicial. It is our opinion that the testimony was admissible to show motive, intent and ill will on the part of the appellant towards the deceased. The mere fact that in the same conversation and in the same threat against deceased he included the names of other persons would not render the statement inadmissible and could not have prejudiced the jury against the appellant any more than if the court had required the witness to omit from the appellant's statement the names of Kitchen and Fraser. Said names were so connected and interwoven in his threat against the deceased, as well as his motive which prompted him in making the same, that they were inseparable. We therefore overrule the appellant's contention.

By bill of exception No. 5 appellant complains of the following argument by Mr. Vickers, who was engaged in the prosecution of this case: "No one knows what that conversation was for the reason that Jay Donaldson is dead." The bill of exception discloses that Mrs. Gordon testified that on the afternoon prior to the time that Jay Donaldson and Bertha Gordon were killed, the appellant came to her house; that soon after he arrived Jay Donaldson and Bertha Gordon came in; that appellant and Donaldson retired to a bed room in the back of her home, had a conversation and then returned to the living room; that in a short time thereafter the appellant, Jay Donaldson, and Bertha Gordon left in appellant's car. The appellant objected to the quoted argument because it was a reference to his failure to testify. This contention must be sustained unless it appears that some third party could have been present when the conversation took place who might have testified to it. From the bill itself it appears that the only persons at the home of Mrs. Gordon at the time were the

appellant, the deceased Bertha Gordon, Jay Donaldson, and Mrs. Gordon. The only persons living who were present at the home of Mrs. Gordon at the time the alleged conversation took place were Mrs. Gordon and appellant. It is true Mrs. Gordon testified but she could not testify to the subject matter of the conversation for the reason that appellant and Donaldson had retired to a back bedroom where she could not hear what they said. That they did not want anyone to hear their conversation is apparent from the fact that they retired to a private bedroom. Hence it is obvious that when Mr. Vickers made the remarks attributed to him that the only logical inference to be drawn therefrom was that "appellant is the only person who knows what the conversation between himself and Donaldson was and he failed to take the witness stand and tell you." In the case of Boone v. State, 90 Texas Crim. Rep., 374, 235, S. W., 580, this court said: "An indirect comment upon the failure of the accused to testify is quite as hurtful as a direct one, and this court has often held that the consequences of the violation of the statute were not to be avoided by the adroitness of counsel in selecting indirect rather than direct means of disregarding it. See Miller v. State, 45 Texas Crim. Rep., 517." We are not unmindful of the rule announced in the case of Boone v. State, supra, that for an argument to be infringement of the statute it must appear that it can not reasonably be applied to any other testimony adduced at the trial. In the case under consideration, it is apparent that the argument could not be applied to appellant's failure to produce any other witness who might have testified to the conversation, and therefore was an indirect reference to accused's failure to testify. We regret that, although this court has been compelled on many occasions to reverse cases for similar infringements of the statute by prosecuting attorneys, they are not more cautious and confine themselves in their discussion to the testimony admitted under the ruling of the court.

The appellant's objection to the court's charge because the court failed to instruct the jury on murder without malice is without merit. The court, under article 1257c, P. C., is only required to charge on murder without malice when the testimony in the case shows that the homicide was committed without justification or excuse under the immediate influence of sudden passion arising from an adequate cause. In the case under consideration there was no testimony that appellant killed the deceased while under the immediate influence of sudden passion.

We suggest that upon another trial the court should sustain the appellant's objection to the testimony of Susie Gordon relating to what the appellant said to her about Mr. Cato and also sustain the apellant's objection to the testimony of George Pierce as to what the appellant said to him with reference to appellant's inquiry as to where Kitchen and Fraser were.

The testimony of the witness Cato and his deputy, to which the appellant objected, was admissible because it demonstrated the fact that the report of a gun or a pistol fired at the place where the dead bodies were found could be heard by a person at the home of Charles Miller and tended to corroborate Miller, his wife and his mother that they heard the report of a pistol within fifteen or twenty minutes after the appellant and deceased had left their home.

For the error hereinabove pointed out, the judgment of the trial court is reversed and the cause is remanded.

*Reversed and remanded.*

MORROW, P. J., absent.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.