**Ex parte Ralph Carl POWERS.**

**No. 45450.**

Court of Criminal Appeals of Texas.

Nov. 29, 1972.

Clyde W. Woody, Marian S. Rosen, Houston, for appellant.

Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This application for writ of habeas corpus was dismissed on May 3, 1972, for the reason that both the United States Court of Appeals for the Fifth Circuit and the United States District Court for the Western District of Texas had retained jurisdiction of this case, holding it in abeyance in habeas corpus matters pending before them. This court declined to consider the petitioner's application so long as those courts retained jurisdiction.

Appropriate orders have now been entered by both the United States Court of Appeals for the Fifth Circuit and the United States District Court for the Western District of Texas, dismissing all matters pertaining to this case.

We will now consider the application for writ of habeas corpus. The issues have been fully briefed and argued before this court.

The long, procedural history of the case need not be fully recited here and will be referred to only as necessary to the discussion of the petitioner's contentions.

The principal contention to be considered is the petitioner's claim that he, a Caucasian, was denied a fair and impartial trial by jury because black citizens were systematically excluded from the trial jury.

This question was not raised in preceding applications for writ of habeas corpus. During a hearing on remand from the Federal court on a different question, the state trial judge conducting the hearing found in the records of the case a handwritten note on lined paper, not bearing a file mark or date, which read: "Both sides agree to excuse Negroes, no charge to either side."

The petitioner's retained counsel of his choice then filed an additional application for writ of habeas corpus and was granted a hearing in the state trial court concerning his allegations that black citizens had been excluded from the jury which rendered the verdict against him.

Prior to and during the trial on the merits, the petitioner was represented by four attorneys of his choice who had been retained to defend him. At the time of this habeas corpus hearing, of the attorneys who had represented him at trial, two testified, one was dead and the other was incapacitated to the extent he was not a witness. The trial judge who tried the case, the district attorney and the special prosecutor who assisted him, the court reporter and the deputy clerk assigned to the trial court at the time of trial, were among the witnesses testifying in the habeas corpus proceeding.

The Honorable Archie Brown, presiding as judge of the 175th District Court of Bexar County, having heard this application, made findings of fact and based upon such findings recommended denial of the

relief requested and transmitted the record to this court. See Article 11.07, Vernon's Ann.C.C.P.

The findings of the trial court, pertinent here, are as follows:

"The Court finds as a matter of fact, in regard to the note which read, 'Both sides agree to excuse Negroes, no charge to either side,' that said note was in fact handed to the Honorable John F. Onion, Jr., who was the trial Judge at the time, during the voir dire examination of the jury panel and at a time when some 10 or 15 prospective jurors had already been examined; that, during the early part of the voir dire examination, the trial Judge noticed the attorneys for the defendant and the speical prosecutor for the State, Mr. Fred Semaan, conferring at the counsel table and inquired as to the nature of the delay because of this conference. That thereafter, and considerably later, Mr. Semaan, the special prosecutor, brought the aforesaid note to the Bench and exhibited it to the trial judge.

"Upon being apprized of the contents of the note, The Honorable John F. Onion, Jr., inquired of the defendant as to his knowledge and understanding of the agreement; and that the defendant, in person, stated that he understood the agreement and, acting upon advice of counsel, he agreed to the same. That, at the time of this proceeding, the court reporter was not physically present in the courtroom, although all of the other parties were.

"The Court further finds as a matter of fact, after a reading of the entire transcript of the voir dire examination of the jurors, that no juror appears to have been excused because of the aforesaid agreement.

"The Court, therefore, concludes as a matter of law, in connection with the matter raised in the original petition for Writ of Habeas Corpus, that the agreement to excuse Negroes was entered into with the knowledge and consent of the defendant in person and that he knowingly waived any right to complain.

"The Court further concludes, from a review of the record of the voir dire examination, that said agreement apparently was not carried into execution and that there is no merit in the contention of petitioner in the original petition filed in this cause on October 6, 1970."

The petitioner argues that the trial court failed to "properly examine the petitioner in connection with his alleged agreement to the exclusion of members of a minority group from jury service," and that the "petitioner did not waive any possible objection he may have had concerning the exclusion of a minority group when the petitioner did not knowingly waive his right to a fair and impartial jury." ·

It has long been recognized that the systematic exclusion of Negroes from a trial jury constitutes a deprivation of a constitutional right. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1879). The Supreme Court of the United States has more recently held in a plurality opinion in Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), that ". . . whatever his race, a criminal defendant has standing to challenge the system used to select his . . . petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law." However, this issue is not before the court as we find the evidence supports the trial court's finding that the petitioner personally and through counsel, voluntarily and knowingly waived the constitutional right of which he now says he was deprived.

■ The record is clear that a number of black citizens, roughly in proportion to their number in the total population of the county, were on the jury lists and panels voir dired by counsel and were available as prospective jurors. The petitioner, in his

brief, says, "The Petitioner will concede that Bexar County apparently did not follow or have a systematic exclusion of Negroes as a minority group or race from jury service on petit juries generally in the County. However, the Petitioner submits that there was systematic exclusion as to the jury which convicted him." Some prospective jurors were excused by the petitioner's counsel and even if they were excused pursuant to an agreement evidenced by the note, we hold that the petitioner is shown to have made a considered choice intentionally relinquishing and abandoning the known right to have black citizens serve on his trial jury. The requirements of Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L.Ed. 1461 (1938); Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L. Ed.2d 70 (1962) and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), concerning waiver, have been met.

Having found that the appellant personally participated in the waiver, we need not decide whether counsel could do so without petitioner's personal participation in the waiver. See Fay v. Noia, supra, and Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

■ The petitioner, by brief and argument, has reurged his contention that the petitioner's constitutional rights were violated in that the jury selection did not meet the requirements laid down by the United States Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

The death penalty assessed in this case may not now be carried out, Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972) and Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); therefore, the petitioner's *Witherspoon* questions need not be considered. Witherspoon v. State, 486 S.W.2d 953 (1972); Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) and Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

■ The petitioner has also reurged his contention that the petitioner was "denied a fair and impartial trial by virtue of the Special Prosecutor who was not sworn or duly elected, nor appointed to represent the State of Texas, but was only hired by the family of the deceased to avenge the personal feelings and emotions of the family of the deceased and such a procedure is unconstitutional in violation of the Sixth and Fourteenth Amendments of the Constitution of the United States."

This question has already been presented and, after a hearing, rejected by the United States District Court as being without merit. See exhibit to opinion in Powers v. Hauck, 399 F.2d 322, 323–326 (5th Cir. 1968).

We also reject this contention.

The application for writ of habeas corpus is denied.

Opinion approved by the Court.

ONION, P. J., and DOUGLAS, J., not participating.