Ex parte Roy Dale GREEN.

No. 53560.

Court of Criminal Appeals of Texas.

April 6, 1977.

Brantley Pringle, Fort Worth, Jack D. Welch, Marlin, for appellant.

Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This is a post conviction writ of habeas corpus proceeding. See Article 11.07, V.A.C.C.P.

On August 6, 1966, Kenneth McDuff and Petitioner kidnapped two young boys and a girl in Tarrant County. The two boys, Robert Brand and Marcus Dunnam, were locked in the trunk of one of the victims' car. McDuff later opened the trunk and fired six shots from a pistol into the heads of the boys, killing them instantly.

Petitioner Green was charged in two separate indictments; one indictment charged him with the murder of Marcus Dunnam; the other charged him with the murder of Robert Brand. On June 10, 1968, Petitioner was tried before a jury on the indictment charging him with the murder of Marcus Dunnam. The jury returned a verdict of guilty of murder without malice, and on June 13, 1968, the court assessed punishment and sentenced Petitioner to the maximum punishment of imprisonment for 5 years.

On March 20, 1969, Petitioner filed a plea of prior conviction urging that the doctrine of carving as applied in this State estopped and precluded the State from prosecuting him on the indictment charging the murder of Robert Brand. This plea was overruled and on March 21, 1969, the Petitioner then plead guilty to the indictment charging him with the murder of Robert Brand. The State did not seek the death penalty, and the Petitioner was sentenced to imprisonment for 25 years.

On June 23, 1969, the Supreme Court of the United States held in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), that the Double Jeopardy Clause of the United States Constitution was applicable to the states. In 1970 the Supreme Court held in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), that the doctrine of collateral estoppel is an embodiment of the Double Jeopardy Clause.

In 1974, Petitioner filed a writ of habeas corpus in the District Court of Tarrant County; relief was denied without written opinion. Petitioner then filed a writ of habeas corpus in the United States District Court for the Northern District of Texas. The United States district court, without reaching the merits, rejected Petitioner's writ in reliance upon *Cox v. Crouse,* 376 F.2d 824 (10th Cir. 1967), and *Harris v. United States,* 237 F.2d 274 (8th Cir. 1956), and held that Petitioner's claim was foreclosed by his plea of guilty. While his appeal was pending in the Fifth Circuit, the United States Supreme Court announced its decision in *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975). *Menna* held that a plea of guilty does not waive a claim of double jeopardy under the United States Constitution. Thereafter, the Fifth Circuit remanded the case to the district court for consideration of Petitioner's claim on the merits. *Green v. Estelle,* 524 F.2d 1243 (5th Cir. 1975). The federal district court, on February 26, 1976, dismissed Petitioner's application in order to allow the state courts an opportunity to consider his constitutional question on its merits in light of *Menna v. New York,* supra.

The federal district court order of February 26, 1976, states:

"In this Circuit, a strong policy exists to allow the state courts an initial opportunity to rule on a constitutional issue where the specific federal right was asserted at the state level in an ambiguous manner or where a subsequent Supreme Court ruling creates the possibility that the state might change its decisional law if given the opportunity. Comity requires that the state court be given the initial opportunity to assess the factual foundation of Green's claims of double jeopardy and to address the issue to be resolved in its opinion. *Donlavey v. Smith,* 432 F.2d 940 (5th Cir. 1970). See *McBride v. Estelle,* 507 F.2d 903 (5th Cir. 1975); *Alonzo v. Estelle,* 500 F.2d 672 (5th Cir. 1974)."

Instead of either appealing this order to the Fifth Circuit or proceeding in the state court where the Petitioner was convicted, Petitioner appealed from the federal

court order and *at the same time* filed his application for writ of habeas corpus in the District Court of Falls County. On motion by the State, the cause was properly transferred from Falls County to Criminal District Court Number One of Tarrant County, the court in which Petitioner was convicted. This Court unambiguously stated in *Ex parte Young*, 418 S.W.2d 824 (Tex.Cr.App. 1967) that:

> "The primary responsibility now being cast upon the convicting court by the amendment of Art. 11.07, the Court of Criminal Appeals will no longer exercise its constitutional original jurisdiction to entertain petitions seeking post conviction relief from confinement under a felony case unless it be shown that the petition, or one containing like sworn allegations of fact, has been presented to the judge of the convicting court."

An attempt at "forum shopping," which is contrary to the provisions of Article 11.07, V.A.C.C.P., merely delays a speedy hearing on the merits of the petition.

Further delay was caused by prosecuting an appeal to the Fifth Circuit from the federal court order at the same time Petitioner proceeded on his application for writ of habeas corpus in the courts of this State. A petitioner must decide which forum he will proceed in, because this Court will not, and a trial court in this State should not, consider a petitioner's application so long as the federal courts retain jurisdiction of the same matter. *Ex parte Powers*, 487 S.W.2d 101 (Tex.Cr.App.1972). The Fifth Circuit Court of Appeals has now dismissed Petitioner's appeal from the federal district court order; therefore, we will now consider Petitioner's application on its merits.

Petitioner contends that the doctrine of collateral estoppel as announced in *Ashe v. Swenson*, supra, precludes the State from relitigating the issue of his state of mind at the time the two boys were killed. He asserts that the evidence shows that both boys were killed virtually simultaneously by Kenneth McDuff. Petitioner argues that the jury's verdict at his first trial, finding

him guilty as a principal of the murder without malice of Marcus Dunnam, was an implied acquittal of the charge of murder with malice, therefore the State cannot convict him of an offense higher than murder without malice of Robert Brand at the subsequent trial.

In *Ashe v. Swenson*, supra, Ashe had been acquitted by a jury of robbing one of six poker players at a poker game due to insufficient evidence. The Supreme Court found that the only rationally conceivable issue at the trial was the identity of the defendant as one of the robbers. Therefore, since the jury decided the issue of identity adverse to the State at the first trial, the State was precluded from charging Ashe with the robbery of another poker player based on the same transaction. The Court held that the theory of collateral estoppel applies to criminal cases and is embodied in the Fifth Amendment's guaranty against double jeopardy. Thus, once an issue of ultimate fact has been determined by a valid and final judgment of acquittal, a defendant cannot be expected to "run the gauntlet" a second time. In applying this doctrine, the court stated:

> "The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'"

At the evidentiary hearing in the district court, the record reflects that no appeal was taken from the proceedings in Petitioner's first trial. No record was made of that trial, the court reporter who recorded the proceeding has since died, and no one has been able to locate a statement of facts of

the testimony. However, the record shows that the evidence at Petitioner's first trial was substantially the same as the evidence received at Kenneth McDuff's trial. The record at McDuff's trial has been made a part of this record. In addition, the record contains a transcript of the proceedings at Petitioner's first trial, which includes the indictment, court's charge, judgment, and sentence. Other than physical evidence, the only evidence as to the events that occurred on August 6, 1966, is Petitioner's testimony and his written confession.

At Petitioner's first trial the court charged the jury on the law of murder, principals, and duress. The charge instructed the jury to find Petitioner either guilty of murder with malice, guilty of murder without malice, or not guilty. Since the jury found Petitioner guilty of murder without malice, we will focus our attention on the court's charge on malice in order to determine whether the jury's verdict was the result of a factual determination of the issue of malice. That portion of the charge was as follows:

" 'Malice aforethought' is the voluntary and intentional doing of an unlawful act by one of sound memory and discretion with the purpose, means and ability to accomplish the reasonable and probable consequences of the act. Malice aforethought includes all those states of mind under which the killing of a person takes place without any cause which will in law justify, excuse, or exterminate the homicide. It is a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from the acts committed or words spoken. Malice aforethought as used in this charge, means considered, resolved or thought out, for any length of time beforehand, however short, and existing at the time of the offense alleged. Murder without malice is a voluntary homicide, committed without justification or excuse, under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection."

The record reflects that Petitioner and Kenneth McDuff were riding around Fort Worth on August 6, 1966. Sometime after 9:00 p. m. they went to a baseball park and saw a car parked on a gravel road. They stopped about 150 yards from the car; McDuff got his gun, then they walked toward the car. About halfway to the car Petitioner stopped and McDuff went on. McDuff told the two boys and girl to get out of the car or he would shoot them. McDuff put the boys and girl in the trunk of their car. After they drove to another location McDuff took the girl out of the trunk and instructed Petitioner to put her in the trunk ·of his car. Petitioner stated that McDuff then said, "We can't leave any witnesses. I'm gonna have to knock them off." Petitioner stated that he thought McDuff was joking. Petitioner turned toward McDuff who then stuck the gun into the trunk where the boys were and shot six times. Petitioner said he saw the fire come out of the gun on the first shot, then covered his ears and looked away. After they removed their fingerprints from the car and covered their tire tracks they left in McDuff's car. After driving to another location they both raped the girl; then while Petitioner held the girl's feet McDuff strangled the girl with a broomstick.

The record shows that there was no evidence before the jury at Petitioner's first trial raising the issue of murder without malice. There is no testimony from any source that either Petitioner or McDuff killed the two boys under the immediate influence of a sudden passion arising from an adequate cause. A charge on murder without malice was not required by the facts of this case, see *Leza v. State,* 149 Tex.Cr.R. 448, 195 S.W.2d 552 (Tex.Cr.App. 1946); *Bridges v. State,* 128 Tex.Cr.R. 544, 83 S.W.2d 671 (Tex.Cr.App.1935); however, Petitioner could not complain of a beneficial charge erroneously submitted. Therefore, the only rational conclusion that this Court can make is that the jury at Petition-

er's first trial did not ground its verdict upon a *factual* determination of Petitioner's malice. This conclusion is further supported by the habeas corpus testimony of J. A. Gilbert, a juror at Petitioner's trial. He said that the defense introduced testimony of Petitioner's youth and cooperation with the law enforcement authorities. He testified that the jury's verdict was not based on a true finding of no malice, but was based upon Petitioner's youth, his cooperation with the police, and his lack of participation in the actual killing of Dunnam.

From an examination of the entire record, we can only say that the jury grounded its verdict upon consideration of matters other than the *factual* determination of malice. Therefore, the State was not collaterally estopped from charging Petitioner with the murder with malice of Robert Brand at the subsequent trial.

The relief requested is denied.

Opinion approved by the Court.

ONION, P. J., concurs in the result.

ROBERTS, Judge, dissenting.

I believe that the State was barred from prosecuting appellant for murder with malice in this case, since the issue of malice had already been decided in appellant's favor. I would uphold the plea of former jeopardy.

Under our former Penal Code the only difference between murder with malice and murder without malice was the *fact* issue of malice. Arts. 1257b, 1257c, V.A.P.C. (1925); *Mosley v. State,* 149 Tex.Cr.R. 523, 528, 196 S.W.2d 822, 825 (1946).

In the earlier case against appellant (in which Dunnam was the victim) the jury acquitted appellant on the malice issue and found him guilty only of murder without malice. That verdict precludes the State from any future prosecution of the appellant for murder with malice *in that case*; should the State be required to re-prosecute, it could allege no greater offense than murder *without malice. Turner v. State,* 518 S.W.2d 243 (Tex.Cr.App.1975).

In this case (in which Brand was the victim) the appellant was found guilty of murder *with* malice and his punishment was assessed at a term twenty years greater than the maximum possible punishment for the offense of murder without malice. It is clear that appellant's intent and state of mind were exactly the same during the commission of this offense as they were during the killing of Dunnam; the facts submit to no other interpretation, since the death of both resulted from a single course of conduct.

In such a case I believe the holding in *Turner* prohibits the State from prosecuting appellant for the offense of murder *with malice* of Brand, since the appellant had already been acquitted on the issue of malice. It seems to me that the holding in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), relied upon in *Turner,* requires nothing less. Here, as in *Ashe,* "an issue of ultimate fact has . . . been determined by a valid and final judgment, [and] that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S., at 443, 90 S.Ct. at 1194.

I am aware that this Court's holding in *Simien v. State,* 514 S.W.2d 452 (Tex.Cr. App.1974), supports the majority's position. However, that case is incorrectly decided and should be overruled. The case is incorrect because it mistakenly holds that *Ashe v. Swenson,* supra, applies only to outright acquittals. Clearly, the holding in *Ashe* also applies to a partial acquittal, such as occurred in this case. *Pope v. State,* 509 S.W.2d 593 (Tex.Cr.App.1974); see also *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), and *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

I do not agree that the testimony of J. A. Gilbert can be used to support the majority opinion. I would hold that Gilbert's testimony is nothing more nor less than an attempt to impeach his verdict, and therefore incompetent and not to be considered. *Adams v. State,* 481 S.W.2d 884 (Tex.Cr. App.1972); *Simmons v. State,* 493 S.W.2d 937 (Tex.Cr.App.1973). To hold otherwise

would be to say that a juror may impeach his verdict if it will support the conviction but may not do so if it will tend to reverse the conviction.

The majority also indicates that because a charge on murder without malice was not supported by the evidence at the first trial, the jury's finding of a lack of malice can be ignored. This is incorrect for two reasons. First, such a holding is a repudiation of the constitutional right to trial by jury. U.S. Const. Amend. 6; Art. 1, Sec. 15, Vernon's Ann.Tex.Const. Would the majority reach the same result if no charge on murder without malice were given in the first trial and the jury acquitted appellant? I see no difference between the two cases. Second, the majority's holding disregards the well-established rule that where one is charged with a greater offense but convicted of a lesser included offense the evidence will be deemed sufficient if it proves only the elements of the greater offense. *Daniels v. State,* 464 S.W.2d 368 (Tex.Cr.App.1971); Arts. 37.08, 37.09, Vernon's Ann.C.C.P. Evidently, this rule too shall apply only where it serves to *support* the conviction.

I also believe that by sustaining the State's contention that this Court may ignore the jury's verdict of murder without malice, this Court is allowing the State to do indirectly what it may not do directly: appeal a criminal case in violation of Article 5, Section 26 of the Texas Constitution. See *White v. State,* 543 S.W.2d 366 (Tex.Cr. App.1976), and authorities there cited.

The requested relief should be granted. I dissent.

PHILLIPS, Judge, dissenting.

This is a post conviction writ of habeas corpus proceeding. See Art. 11.07, V.A.C. C.P.

On August 6, 1966, Kenneth McDuff and Petitioner kidnapped two young boys and a girl in Tarrant County. The two boys, Robert Brand and Marcus Dunnam, were locked in the trunk of one of the victims' car. McDuff later opened the trunk and fired six shots from a pistol into the heads of the boys, killing them instantly.

Petitioner Green was charged in two separate indictments; one indictment charged him with the murder of Marcus Dunnam; the other charged him with the murder of Robert Brand. On June 10, 1968, Petitioner was tried before a jury on the indictment charging him with the murder of Marcus Dunnam. The jury returned a verdict of guilty of murder without malice, and on June 13, 1968, the court assessed punishment and sentenced Petitioner to the maximum punishment of imprisonment for five years.

On March 20, 1969, Petitioner filed a plea of prior conviction urging that the doctrine of carving as applied in this State estopped and precluded the State from prosecuting him on the indictment charging the murder of Robert Brand. This plea was overruled and on March 21, 1969, the Petitioner then pled guilty to the indictment charging him with the murder of Robert Brand. The State did not seek the death penalty, and the Petitioner was sentenced to imprisonment for twenty-five years.

Petitioner contends that under the doctrine of "collateral estoppel" the fact issue of malice as to the simultaneous killing of both of said boys was adjudicated adversely to the State by the 1968 finding of the jury that he was guilty of the offense of murder without malice of Marcus Dunnam and that his 1969 conviction of murder with malice of Robert Brand was in violation of the law of collateral estoppel.

The Supreme Court of the United States has held that the double jeopardy clause of the United States Constitution is applied to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), that even a counseled plea of guilty does not preclude consideration of a question of double jeopardy, *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), and that the principle of collateral estoppel is embodied in the constitutional guarantee against double jeopardy, *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

"Collateral estoppel" means that when an issue of ultimate fact has once been deter-

mined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future criminal prosecution, *Ashe v. Swenson,* supra. It has been held that an acquittal of burglary with intent to commit rape bars a prosecution for assault with intent to have committed the same rape, *Johnson v. Estelle,* 506 F.2d 347 (5th Cir. 1975), and that acquittal of the armed robbery of one of the six players robbed simultaneously at a poker game was a bar to prosecution as to another of said players, *Ashe v. Swenson,* supra.

The State contends herein that we should go behind the jury's specific finding of murder *without malice* and consider whether the issue of murder without malice was in fact raised by the evidence so as to justify the court's charge and the jury's finding thereon. Such contention is premised upon the theory that the Supreme Court in *Ashe v. Swenson,* supra, examined the record to determine what ultimate facts must have been determined to support the *general verdict* of acquittal.

The State fails to take due cognizance of the fact that in *Ashe v. Swenson,* supra,

there was only a *general verdict* of acquittal, whereas in this case we have a *special verdict* finding that the murder in question was committed "without malice". The State having specifically alleged the existence of malice aforethought in its pleading, the defendant having joined the issue therewith by his plea of not guilty, and the jury having returned a *special verdict specifically finding* in petitioner's favor on said issue, the State is barred from relitigating said fact issue, or questioning, in a collateral proceeding, the propriety of the court's charge or sufficiency of the evidence thereon. Black on Judgments, Vol. 2, 2nd Ed., Sec. 625, p. 952. The law is settled in this State that where a defendant is tried on an indictment charging murder with malice aforethought a verdict that specifically finds him to be guilty of murder without malice constitutes a finding of nonexistence of malice aforethought. *Turner v. State,* 518 S.W.2d 243. Petitioner having served the maximum sentence that could have been imposed under the law for the 1969 conviction is entitled to be discharged from further confinement.