**Ex parte Ruben NARANJO BALDIVIA**

No. 07–86–0241–CR.

Court of Appeals of Texas, Amarillo.

March 25, 1987.

Chappell, Lanehart & Aldridge, Chuck Lanehart, Lubbock, for appellant.

Jimmy F. Davis, Dist. Atty., Dimmitt, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant brings this appeal from the denial by the trial court of relief sought by him under two applications for writ of habeas corpus and a motion to dismiss. In three points, appellant says the trial court erred (1) in denying his writ of habeas corpus based upon the prohibition against double jeopardy provided by the Fifth Amendment to the United States Constitution, article one, section fourteen of the Texas Constitution, and article 1.01 of the Texas Code of Criminal Procedure; (2) in denying appellant's motion to dismiss for lack of a speedy trial in contravention of the Sixth Amendment to the United States Constitution and articles 1.05 and 32A.02 of the Texas Code of Criminal Procedure; and (3) in refusing the reduction in bail sought by appellant in his second application for writ of habeas corpus. Disagreeing with his contentions, we affirm the trial court's judgment.

The facts in the case are that shortly before June 6, 1985, Pattie and Robert Glenn Ballard had moved back to Castro County from Colorado. They had leased from the Spencer Estate some farm land located about thirteen or fourteen miles southwest of Dimmitt. While they were waiting for the brick residence located on the property to be vacated, the Ballards had moved a camper trailer on the property and located it immediately behind the brick house. They were residing in that trailer while the children of Mrs. Spencer, who had moved to a convalescent home, removed Mrs. Spencer's possessions from the house.

About 3:30 in the early morning of June 6, Mrs. Ballard was awakened by the sound of her dog barking. She went back to sleep but was later reawakened and saw the reflection of lights on a motor vehicle turning in the residence driveway. A "few minutes later" she again heard her dog barking, got up and looked out, and saw two men coming around the corner of the residence. She heard the men talking to each other in the Spanish language. She saw the men stop and unsuccessfully try to quiet her dog. They went around the corner of the house. She awakened her husband and told him about the two men but he did not get up then because he thought the men would leave when they found no one at the residence.

Mrs. Ballard next noticed some very dim lights in the house and again awakened her husband. He got up, took a gun, and went to investigate. She heard her husband ask the men if they had a key to get into the house and a conversation then ensued, all of which she could not hear. She then heard the vehicle start and heard a shot from her husband's gun. She could hear her husband say "I told you to leave, and I mean it," and she heard her dog "charge" someone. She then heard two more shots followed by the sound of the vehicle leaving the scene. She found her husband lying unconscious on the north side of the house. He died without regaining consciousness. It was later discovered that he died as the result of a puncture wound in the chest caused by an unknown sharp instrument. Subsequent investigation revealed the residence had been broken into, several items moved, and a fingerprint of

appellant found on a kerosene lamp inside the house.

On June 21, 1985, the Castro County grand jury returned an indictment charging appellant, in multiple counts, with capital murder, murder, and burglary of a habitation. A change of venue to Swisher County was granted and, prior to commencement of the trial, the capital murder count was dismissed with the State electing to proceed on the murder count. As a result of that trial, on April 14, 1986, appellant was found not guilty of murder. On that same day, April 14, 1986, appellant was again charged with burglary of a habitation and was formally reindicted on that charge on May 21, 1986.

■ Appellant initially contends that his prosecution is barred by the constitutionally based doctrine of collateral estoppel. That doctrine is a corollary of the Fifth Amendment prohibition against double jeopardy and made applicable to the states through the Fourteenth Amendment. As explicated in the seminal case of *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194. The *Ashe* Court continued its exposition by cautioning that the rule "is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality" and where, as here, an acquittal was the result of a general verdict, a court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 444, 90 S.Ct. at 1194. *See also Dedrick v. State*, 623 S.W.2d 332, 336 (Tex.Crim. App.1981); *Ex parte Green*, 548 S.W.2d 914, 916–17 (Tex.Crim.App.1977). In light of that instruction, we have examined the record of the prior trial and conclude that collateral estoppel would not prevent the prosecution of the present case.

The essential elements of the murder charge under which the State proceeded, and must have established to obtain a conviction, were that appellant intentionally and knowingly caused the death of Robert Ballard by striking and stabbing him with a blunt and sharp instrument or that, acting with the intent to promote or assist the commission of the murder, appellant solicited, aided, or encouraged the other person to commit the murder. Those were, of course, the ultimate facts for decision in that case.

The basis of appellant's contention is that "the only ultimate fact that the State had to prove was Appellant's identity and presence at the scene of the crime, and it failed to convince the jury that Appellant was there at that time." We disagree. It is axiomatic, and the jury was properly so charged, that appellant's mere presence alone was not sufficient to make him a party to murder. *See LeDuc v. State*, 593 S.W.2d 678, 684 (Tex.Crim.App.1979). The jury could well have concluded that even though appellant was present, the stabbing was the act of the other person and appellant was not guilty of any such conduct as to make him a party to the crime of murder.

The elements of the instant offense are that (1) the appellant; (2) without the effective consent of the owner; (3) entered a habitation not then open to the public; (4) with intent to commit theft. *Reyes v. State*, 628 S.W.2d 238, 239 (Tex.App.—San Antonio 1982, no pet.). These elements are quite different from those involved in the murder charge. In summary, our review of the record satisfies us that the trial jury could rationally have grounded its verdict upon issues other than those necessary to establish the offense of burglary of a habitation. That being the case, the doctrine of collateral estoppel would not bar prosecution of the burglary charge.

Appellant also argues "that the State, through its election to proceed in the murder count, abandoned burglary of a habitation within the capital murder count and

the burglary of a habitation count listed separately." The effect of this, he says, is "a form of dismissal upon those charges" preventing further prosecution. The thrust of his argument is that to allow the State to subsequently prosecute a charge after having once abandoned that charge permits multiple prosecutions which insidiously discriminate against a defendant and the State should therefore be estopped from such a procedure. In support of this proposition, he relies upon the Court's decision in *Foster v. State*, 661 S.W.2d 205 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd).

*Foster* is inapposite to appellant's position. In that case, a defendant was convicted in a bench trial based upon an indictment containing two paragraphs alleging the same offense two different ways. Foster's contention on appeal was that his conviction was in violation of the constitutional prohibition against double jeopardy since he was convicted under the second count after the State had elected to proceed only under the first count.

In rejecting Foster's attack, the Court noted that the prosecutor's purported election was never approved by the court. Moreover, it placed emphasis upon the fact that immediately after the prosecutor expressed a desire to proceed only on the first paragraph, he recanted, expressed a desire to proceed on both paragraphs, and did so. That being the case, the Court held no election had been made and, the evidence being sufficient, sustained the conviction. *Id.* at 209.

■ It is well established in this State that a defendant may properly be convicted for separate acts in violation of separate statutes. *Patterson v. State*, 581 S.W.2d 696, 697 (Tex.Crim.App.1979). Moreover, neither the federal or state constitutions prohibit multiple prosecution for two statutory offenses committed in the same transaction. The test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. *Ex parte McWilliams*, 634 S.W.2d 815, 823–24 (Tex. Crim.App.1982) (opinion on motion for re-

hearing), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982). Conviction of the offense of burglary of a habitation obviously requires proof of different facts from those requisite to convict for murder. Since the State's election to proceed only on the murder charge was made with the approval of the court and prior to the time the jury was sworn, jeopardy did not attach insofar as the burglary charge is concerned. *Patterson v. State*, 581 S.W.2d at 697. Appellant's first point is overruled.

Having made that determination, we must next consider whether to permit this prosecution would violate appellant's constitutional right to a speedy trial. The right of an accused in a criminal case to a speedy trial is one guaranteed by the Sixth Amendment to the United States Constitution which is made applicable to the states through the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 222, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). The correlative provision in the Texas Constitution is article one, section ten. That right is also statutorily recognized in section 1.05 of the Texas Code of Criminal Procedure Annotated (Vernon 1977).

The test for determining whether the constitutional right to a speedy trial has been denied is a balancing test based upon at least four criteria: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right; and (4) the prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Davison v. State*, 510 S.W.2d 316, 319 (Tex.Crim.App.1974). However, none of these four criteria have "talismanic qualities" and, in particular, a showing of prejudice is not sina qua non to demonstrating a denial of the right of speedy trial. *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973). However, the accused should make some showing of prejudice caused by the delay of the trial. *Harris v. State*, 489 S.W.2d 303, 308 (Tex.Crim.App.1973). Application of that balancing test, of necessity, results in each case being determined on an ad hoc basis. *Davison v. State*, 510 S.W.2d at 319.

In this case, the parties agree that appellant was arrested on June 14, 1985 and was indicted on June 21, 1985. An interim period then ensued during which time appellant was given an opportunity to employ counsel. He was unable to do so and an attorney was appointed on November 1, 1985. After a hearing, a change of venue to Swisher County was granted on January 30, 1986. A trial scheduled for March 17, 1986 was continued because of the illness of the defense counsel, among others. The trial on the murder charge was held from April 8–14, 1986. The instant charge was refiled on April 14, 1986. Appellant was indicted on this charge on May 21, 1986 with a State announcement of ready for trial on May 22, 1986. Appellant's appellate attorney was appointed on June 6, 1986 and filed an application for writ of habeas corpus by instrument dated June 24, 1986. Parenthetically, we note that appellant filed a handwritten application for writ of habeas corpus on May 23, 1986.

We are instructed by the United States Supreme Court that there are important public interests in the process of appellate review which may sometimes stand in opposition to the right to a speedy trial and that "[i]n that limited class of cases where a pretrial appeal by the defendant is appropriate [citation omitted], delays from such an appeal ordinarily will not weigh in favor of a defendant's speedy trial claims." *United States v. Loud Hawk*, 474 U.S. 302, ——, 106 S.Ct. 648, 655–57, 88 L.Ed.2d 640, 653–55 (1986).

█ In the disposition of this claim, therefore, our attention is directed to the period from June 14, 1985 until June 24, 1986, a period of slightly more than one year. During that period of time, a change of venue hearing had been held, venue changed, an earlier trial setting made, and a trial had. Immediately upon the conclusion of that trial, the instant charge was filed with a reindictment following within slightly over one month, and that indictment was followed by the appointment of

another attorney and the filing, within slightly over one month, of the first of the documents giving rise to this appeal. This record does not show any deliberate or negligent delays on the part of the State and, indeed, would indicate reasonable efforts on the part of the State to move the case. Moreover, the record does not indicate that the delay would hurt or diminish appellant's ability to prepare a proper defense in the case since there is no showing of inability to obtain witnesses or problems of a like nature.

This Court recognizes, of course, that the "evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense," *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971), and among those would be undue and oppressive incarceration. However, we note, as did the Court in *Harris v. State*, 489 S.W.2d at 308 n. 2, that that question is best protected by other procedures short of dismissal available to an accused prior to trial such as the application for reduction of bail or other measures. Suffice it to say that the application of the four part balancing test in this case does not demonstrate a denial of appellant's constitutional right to a speedy trial. Our conclusion is strengthened by the fact that substantially longer periods of delay have been held not to deny that right. *See George v. State*, 498 S.W.2d 202, 205–06 (Tex.Crim.App.1973) (nineteen month delay); *Harris v. State*, 489 S.W.2d at 308 (fifteen month delay).

Having determined that appellant has not been deprived of his constitutional right to a speedy trial, it now becomes our duty to determine whether dismissal is required by the oft-criticized but still existent Texas Speedy Trial Act as enunciated by Tex.Code Crim.Proc.Ann. art. 32A.02 (Vernon Pamp.Supp.1987).*

Article 32A.02, in pertinent part, provides:

Criminal Procedure.

* All references hereinafter made to article numbers are to those articles of the Texas Code of

Section 1. A court shall grant a motion to set aside an indictment ... if the state is not ready for trial within:

(1) 120 days of the commencement of a criminal action if the defendant is accused of a felony;

Sec. 2(a)[A] criminal action commences for purposes of this article when an indictment ... against the defendant is filed in court, unless prior to the filing the defendant is either detained in custody or released on bail or personal bond to answer for the same offense or any other offense arising out of the same transaction, in which event the criminal action commences when he is arrested.

Article 28.061 provides:

If a motion to set aside an indictment, information, or complaint for failure to provide a speedy trial as required by Article 32A.02 is sustained, the court shall discharge the defendant. A discharge under this article is a bar to any further prosecution for the offense discharged or for any other offense arising out of the same transaction.

If the state indeed has not complied with article 32A.02, appellant correctly argues that this prosecution must be dismissed and appellant discharged from custody. We are instructed in *Kalish v. State,* 662 S.W.2d 595, 600 (Tex.Crim.App.1983), that "when a person is detained, placed under restraint or taken into custody by a peace officer, all such chargeable voluntary conduct in which the person was then and there engaged, constituting an offense continuing in nature arises out of the same transaction." That being the case, appellant's arrest on June 14, 1985 triggered the time provisions of article 32A.02 and our inquiry must be as to whether the State has complied with that article since that time.

The announcement of ready upon the original multicount indictment was made on June 23, 1985. This, of course, is well within the 120–day period required by the statute. The indictment here in question was returned on May 21, 1986 and the State announced ready the next day. It is well established that where an accused is indicted for the same offense, the State's announcement of ready in the first case as well as any continuances, delays, etc. that are applicable to the first case are carried forward and apply in the second case as well. *Vanderbilt v. State,* 629 S.W.2d 709, 718 (Tex.Crim.App.1981). Appellant contends that this doctrine does not benefit the State in this case, however, because the reindictment alleges a different owner than that alleged in the original indictment, the effect of which, he says, is to charge a new and different crime.

Resolution of this argument is made more difficult by the fact that the Court of Criminal Appeals has handed down two seemingly inconsistent opinions dealing with the question of when the State's announcement of ready carries forward to subsequent indictments. The Court has granted motions for rehearing in both of these cases but to this point has not written on either rehearing motion.

The first of these cases is *Denson v. State,* No. 63,428 (Tex.Crim.App., July 7, 1987) (reh'g granted) (not yet reported). *Denson* dealt with a situation wherein the defendant was first indicted for murder and later reindicted for aggravated robbery with both offenses arising out of the same transaction. The State's announcement of ready on the murder charge was held to carry forward on the robbery charge. In reaching that result the Court said:

> Since the Speedy Trial Act takes into account and treats together all offenses arising in the same transaction, announcements of ready or continuances granted concerning one offense will apply to another offense when both offenses arise out of the same transaction. There is no dispute that the offenses of robbery and murder here arise out of the same transaction. The trial court did not err in overruling appellant's motion to dismiss the indictment.

*Id.* at 3.

In *Carr v. State,* No. 337–83 (Tex.Crim. App., Sept. 9, 1984) (reh'g granted) (not yet reported), the Court again considered the same question with a different result.

In *Carr*, the defendant was originally indicted for theft and was later reindicted for burglary with both offenses again arising out of the same transaction. In arriving at its decision, the Court opined:

There is a distinction between successive indictments for the same offense and a subsequent indictment for a different offense. As we held in *Ward* (*Ward v. State*, 659 S.W.2d 643 (Tex.Crim.App. 1983)), *Paris* (*Paris v. State*, 668 S.W.2d 411 (Tex.Crim.App.1984)), and *Rosebury* (*Rosebury v. State*, 659 S.W.2d 655 (Tex. Crim.App.1983)), *supra*, when the latter indictment alleges the same offense *or where the facts show that only a single offense has been committed*, the State's announcement of ready on the earlier indictment, will be effective. Conversely, when the subsequent indictment alleges a primary offense that is different from the one alleged in the earlier charging instrument, and the facts show that both offenses were in fact committed in one transaction, we held that the State's timely announcement of ready on one offense does not constitute an announcement of ready on the second, different offense arising out of the same transaction. [Emphasis added.]

*Id.* at 5.

█ However, when both cases are analyzed, we believe there is no dichotomy as to the question before us. Both *Carr* and *Denson*, we believe, are consistent in the rationale that if a single *offense* has been charged with a timely announcement of ready, that announcement carries forward to a reindictment charging the same *offense*. That is exactly what has occurred in this case. The *offense* charged in the first indictment was the burglary of a habitation by appellant and in the reindictment, appellant was charged with the burglary of the same habitation. This sequence is, in its essentials, similar to that considered by the Court in *Perez v. State*, 678 S.W.2d 85 (Tex.Crim.App.1984).

In *Perez*, the defendant was originally indicted for burglary of a vehicle with a timely announcement of ready. Later, as the Court noted, Perez was reindicted "on allegations of the same crime, plus a prior conviction alleged for enhancement." In holding that the original announcement of ready carried forward to the reindictment, the Court commented that "the reindictment was for the same case as that in which the State had timely announced ready." *Id.* at 86. That rationale and holding are applicable in this case.

Our belief that this is true is strengthened by the comments of the Court in *Araiza v. State*, 555 S.W.2d 746 (Tex.Crim. App.1977). In that case, the Court noted that the State had the burden of proving the allegation of ownership as laid in the indictment. However, the Court went on to say:

Under Article 21.08, V.A.C.C.P. [sic], the state is free to allege ownership in either the actual owner of property or in another person who has the possession of the property. Thus, even if the proof showed that A was the title owner of the property, an allegation that B was the owner with proof that B had possession of the property at the time of the offense would present no variance and would be sufficient under the law.

*Id.* at 746–47.

In this case, the undisputed facts establish that Robert Glenn Ballard, the deceased, had leased the property and was awaiting possession of the principal residence from the executors of the Spencer Estate of whom Howard Spencer was one. The change of allegation in the indictment from Ballard as owner to Spencer as owner was not a sufficient variance to charge a different offense. Therefore, the State's timely announcement of ready under the original indictment carries forward to the reindictment. Appellant's second point is overruled.

In his third point, appellant urges that the trial court erred in failing to reduce his bond. The thrust of his argument under this point is that appellant has conclusively demonstrated that he is unable to make the $25,000 bond set by the trial court. The effect of this, he opines, is to effectively deny him his right to reasonable bail guaranteed him under Tex. Const. art. 1, § 11.

It appears that bond in this case was reduced from $100,000 to $25,000 after the acquittal in the murder case and the reindictment in this case, and it is that $25,000 bond which appellant seeks to reduce.

Tex.Code Crim.Proc.Ann. art. 17.15 (Vernon Supp.1987) provides that in the exercise of discretion in setting bond, a judge should be governed by the constitution and the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense may be considered.

The burden of proof is on a petitioner for reduction in bail to show that the bail set is excessive. *Ex parte Vasquez,* 558 S.W.2d 477, 479 (Tex.Crim.App.1977). In considering a reasonable bail, a court may weigh such factors as family ties, residency, ability to make bond, the defendant's work history, and the potential punishment attached to the charged crime and his prior criminal record. *Ex parte Rubac,* 611 S.W.2d 848, 849–50 (Tex.Crim.App.1981); *Ex parte Willman,* 695 S.W.2d 752, 754 (Tex.App.—Houston [1st Dist.] 1985, no pet.).

■ At the bond hearing, appellant's wife testified, in addition to appellant's inability to make bail, that at the time of his arrest, he was a nonresident of the state, that he had a prior 1977 conviction of armed robbery, that he had another prior conviction in Galveston for failure to stop and render aid, that he had lived in a number of towns and had a number of different employers, and that he did not own any property in Castro County or the area. This record does not show that the trial court abused its discretion in the amount of the bond set. Appellant's third point of error is overruled.

In summary, all of appellant's points are overruled, and there being no reversible error, the trial court's judgments are affirmed.