Keith Daniel CENTAMORE, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–81–343–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 11, 1982.

Leonard Roth, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C. J., and JUNELL and PRICE, JJ.

J. CURTISS BROWN, Chief Justice.

This is an appeal from a conviction of murder. The questions presented are whether the trial court abused its discretion by limiting the voir dire examination to approximately thirty minutes in length and whether appellant was entitled to have the jury charged on the lesser included offenses of involuntary manslaughter and criminally negligent homicide. We affirm the conviction.

Keith Daniel Centamore (Centamore or appellant) and Tracy Birchfield (Tracy) were good friends. During the later part of 1978 disagreements with his parents caused Centamore to move out of their home and move in with Tracy's family. Centamore and Tracy's mother, Sandy Birchfield (Sandy), began having discreet sexual relations. The relationship continued to some degree even though Centamore returned to his parents' home to live.

Freddie Trevino (Trevino or deceased) moved into the Birchfield house about a week prior to the incident. The open relationship between Trevino and Sandy greatly concerned Tracy. At one point he telephoned Centamore trying to locate a gun. On the night of the incident, an argument concerning the situation occurred between Trevino, Tracy and Sandy. Tracy told Trevino to leave the house for good and to leave his mother alone. When Trevino refused, Tracy took an unloaded rifle from the closet and threatened to make him leave. Sandy took the gun away from her son.

Tracy and a friend of his left the house and located Centamore. All three returned with Centamore's gun and found Trevino and Sandy in the living room. Their purpose was to scare Trevino out of the house. Tracy was holding the gun with the safety on. Centamore took the gun away from Tracy because "he did not want an accident to happen." He started down the hallway towards the front door, and as he opened it, Trevino slammed it shut. Centamore backed into another room as he requested Trevino to leave and to allow the Birchfields to talk the matter over. Trevino continued to move toward Centamore and finally lunged at him. Centamore fired the rifle and Trevino collapsed on the floor. The deceased was shot twice, but there is some evidence that the second wound may have been inflicted after death. Centamore testified he was afraid of Trevino and felt that "it would have been the other way around" if he had succeeded in taking the gun away.

Centamore and Tracy dragged the body of the deceased to the car, drove to a dead-end road, and dragged the body into the woods. Centamore went to the home of his boss and told him of the incident. They went to the place where the body had been deposited. The following day Centamore received a call from his boss asking him to come over. The police were present and he was taken into custody.

Centamore was charged by indictment, filed November 16, 1979, with the murder of Fernando Trevino. The second paragraph of the indictment alleged appellant intended to cause serious bodily injury to Trevino and caused his death by committing an act clearly dangerous to human life, namely, by shooting him with a firearm. Upon appellant's plea of not guilty a trial was conducted before a jury beginning on July 14, 1980. The court's charge to the jury abstractly stated the law of murder, voluntary manslaughter and self-defense and applied such law to the facts of the case. Centamore was convicted of murder consistent with the second paragraph of the indictment under Tex.Penal Code Ann. § 19.02 (Vernon 1974). Punishment was set by the judge as confinement in the Texas Department of Corrections for twelve years. Appellant perfected appeal to this Court.

Appellant complains of reversible error in the trial court by three grounds of error. He first contends he was denied effective assistance of counsel in that the voir dire examination of defense counsel was limited to thirty minutes. His other two contentions are that he was prejudiced by denial of requested charges to the jury for both of the lesser included offenses of involuntary manslaughter and criminally negligent homicide.

Appellant's first ground of error complains of the trial court's action in limiting the voir dire examination to thirty minutes. "The necessity to question freely and broadly on voir dire in order to decide intelligently when to use one's peremptory challenges has been firmly established as a concomitant to the constitutional right to counsel." *Smith v. State*, 513 S.W.2d 823, 826 (Tex.Cr.App.1974); *See also* Tex.Const. art. I, § 10; *McManus v. State*, 591 S.W.2d 505 (Tex.Cr.App.1980); *DeLaRosa v. State*, 414 S.W.2d 668 (Tex.Cr.App.1967). It is also well settled, however, that the trial court has wide discretion over the course of the voir dire of the jury panel and the only review will be for an abuse of that discretion. *Reich v. State*, 94 Tex.Crim. 449, 251 S.W. 1072 (1923); *Clark v. State*, 608 S.W.2d 667 (Tex.Cr.App.1980).

In *DeLaRosa v. State, supra,* the defense counsel objected in writing when informed

the voir dire examination would be limited to thirty minutes. He requested in that motion to be allowed to propound approximately fifteen proper voir dire questions to each member of the panel. This request was denied and the time limitation prevented him from asking those questions of all panel members, notwithstanding he addressed only a few remarks to the panel as a whole before moving to the questioning of individual jurors. Counsel then attempted to perfect a bill of exception while all the prospective jurors were present to show he was harmed. The court prevented him from doing so. The Court of Criminal Appeals held the time limitation was unreasonable and the result was reversible error.

In *Barrett v. State*, 516 S.W.2d 181 (Tex. Cr.App.1974), defense counsel also objected to a time limitation of thirty minutes for voir dire examination. However, his request did not state why he required additional time for that particular case. He presented twenty-six legal size, single-spaced, typewritten pages of questions he had compiled over the years for voir dire examinations. These covered all areas of criminal law and were not specific to any case. The Court of Criminal Appeals concluded that such an unorganized array of questions did not present the trial court with a concise proposal upon which to base a decision on whether or not to continue voir dire. Therefore, in *Barrett* the limitation was upheld as within the discretion of the trial court in order to avoid undue and unnecessary prolongation of the trial.

■ In the case before us appellant's counsel objected to the thirty minute limitation on voir dire, but did not present a list of questions which he desired to ask until a hearing on a motion for new trial. It also appears from the record that appellant's counsel spent a significant amount of his time discussing general matters to the entire panel. Some of these had already been discussed by the judge in his opening remarks to the panel.[1] Furthermore, we have been presented with no bill of exception

showing how appellant was injured or deprived of any valuable right by the jury selection. *Emanus v. State*, 526 S.W.2d 806 (Tex.Cr.App.1975); *Burkett v. State*, 516 S.W.2d 147 (Tex.Cr.App.1974); *Crowson v. State*, 364 S.W.2d 698 (Tex.Cr.App.1963). Nor is there a showing that appellant's counsel was prevented from making such a bill.

This court does not approve the arbitrary limitation of voir dire nor a thirty minute limitation of voir dire in all cases. However, under the circumstances before us we conclude the trial court did not abuse its discretion. We thus hold the action of the trial court does not constitute reversible error. Appellant's first ground of error is overruled.

■ In his second and third grounds of error appellant complains of the refusal of the trial court to charge the jury on the lesser included offenses of involuntary manslaughter and criminally negligent homicide. The jury was charged on the offenses of murder and voluntary manslaughter. Under Tex.Penal Code Ann. § 19.02 (Vernon 1974), the culpable mental states for murder are intent or knowledge in causing the death of an individual. Voluntary manslaughter under Tex.Penal Code Ann. § 19.-04 (Vernon 1974), requires the same mental state as murder with the additional requirement that the death be caused under the immediate influence of sudden passion arising from adequate cause. The offenses of involuntary manslaughter and criminally negligent homicide under Tex.Penal Code Ann. § 19.05 (Vernon 1974), and Tex.Penal Code Ann. § 19.07 (Vernon 1974), respectively, differ from murder and voluntary manslaughter in the mental state required. For involuntary manslaughter recklessness is required while for criminally negligent homicide, criminal negligence is the culpable mental state.

The distinction between the mental states as it relates to the situation before us concerns whether appellant (1) knew his con-

---

1. Counsel has a duty, within reasonable bounds, to budget his time. *Barrett v. State*, *supra*, 516 S.W.2d at 182.

duct was reasonably certain to cause the death of Trevino, (2) was aware of but consciously disregarded a substantial and unjustifiable risk that his conduct would cause the death of Trevino, or (3) ought to have been aware of a substantial and unjustifiable risk that the death of Trevino would result. *Dillon v. State*, 574 S.W.2d 92 (Tex.Cr.App.1978). We have found no evidence in the record which would raise a fact issue that the appellant was not fully knowledgeable of his conduct. On the contrary he sought to justify his action as self-defense.

A charge on a lesser included offense is not required unless evidence is present which raises an issue of fact that the accused is guilty *only* of the lesser offense. *Watson v. State*, 605 S.W.2d 877 (Tex.Cr.App.1980); *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App.1979); *McBrayer v. State*, 504 S.W.2d 445 (Tex.Cr.App.1974). Therefore, we hold the action of the trial court in refusing to charge the jury on the offenses of involuntary manslaughter and criminally negligent homicide was proper. Appellant's second and third grounds of error are overruled and the conviction is affirmed.

Affirmed.