N.A. WILLIS, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–87–880–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 27, 1988.

Wayne T. Hill, Houston, for appellant.

Cathleen Herasimchuk, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

OPINION

ROBERTSON, Justice.

Appellant pled not guilty to a charge of murder. The jury rejected his plea and convicted him of involuntary manslaughter, found he had been convicted of a prior felony and sentenced him to seven years

confinement. Appellant raises six points of error involving submission of a lesser included offense, submission of an *Allen* charge, sufficiency of the evidence, wording of the charge, failure to grant a directed verdict and failure to grant a mistrial. We affirm.

On the evening of May 3, 1987, patrons were gathered around a bar referred to by various witnesses as Teddy's lounge or the Creole Club. Appellant spoke briefly to two women who were parked outside the club, then proceeded inside to shoot pool. Sometime later Sarge Armitige, the deceased, approached the steps of the club and was confronted by appellant. Evidence adduced at trial showed that appellant hit the deceased in the head with the butt of a pistol as the deceased was walking up the steps to enter the club. Armitige fell backward, hitting his head on wooden pallets used for a walkway to the club. His neck was broken and he died the following day.

At trial, the state introduced the testimony of four witnesses, and appellant rested without introducing evidence after his motion for a directed verdict was denied. Dr. Aurelio Espinola, a medical examiner who performed the autopsy on the deceased, testified that decedent's death was caused by a broken neck, but that there was bruising on the upper and lower eyelids and a faint bruising or contusion on the left arm and on the back. Dr. Espinola testified that being hit in the eye area with a blunt object, such as the butt of a gun, could result in brain damage or skull fracture, which could cause death. He also stated that the decedent's broken neck resulted from blunt trauma to the eye area, which caused him to fall, and strike his head on a board, causing a sudden extension or flexion of the neck.

Another witness, Joyce Byrd, testified that just prior to the incident, she and a friend were parked in front of the club, when appellant appeared and visited with them for awhile. He told them at that time that he was going to get Armitige because he had run into his (appellant's) truck. Appellant left the women, who remained in the car, and went inside to shoot pool. Byrd did not see appellant actually harm Armitige but was inside the club later when appellant came back inside and put a gun to the head of a waitress. Byrd saw appellant leave the club at that point and could see Armitige lying on the ground outside. She testified that appellant kicked the deceased as he left.

A third witness, Anthony Soulaire, was sitting outside the club from the time Armitige walked up until appellant left the club. He stated that as the deceased approached the steps of the club "all of a sudden he [appellant] tapped him, tapped him across the head with a gun handle, right across, right above the eye" about two or three times. He stated the deceased then fell backward hitting his head on the wooden pallets that were used for a walkway to the club entrance and that appellant then "stomped him down on the ground twice." The only other witness at trial was the wife of the deceased who was called to prove the identity of the deceased.

In his first point of error appellant contends that the trial court erred in overruling his objection to the submission of a charge on the lesser included offense of involuntary manslaughter. The court instructed the jury that if appellant intended to cause serious bodily injury to the deceased and did cause his death by intentionally or knowingly committing an act clearly dangerous to human life, namely by hitting Armitige with a handgun, causing Armitige to fall, striking his head, the jury would find appellant guilty of murder. The court, however, over appellant's objection further charged the jury:

> You are further instructed that before a person can be guilty of murder under the indictment, he must have intended to cause serious bodily injury and have committed an act clearly dangerous to human life that caused the death of the deceased. Unless you find beyond a reasonable doubt that the defendant is guilty of murder, or if you have a reasonable doubt thereof, you will next consider

whether he is guilty of the offense of involuntary manslaughter.

The court defined reckless conduct as: A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the defendant's standpoint.

Before a person is deemed to be "reckless" there must actually be both a substantial and an unjustifiable risk that the circumstances exist or that the result will occur, and that the person acting was actually aware of such risk and consciously disregarded it, and if you have a reasonable doubt as to any of such matters, then you would be bound to acquit the defendant of involuntary manslaughter.

The court then instructed the jury that if they believed that appellant recklessly caused the death of the deceased by hitting him in the head with a handgun, causing him to fall and strike his head, the jury would find him guilty of involuntary manslaughter.

Finally, the court further charged:

If you find from the evidence beyond a reasonable doubt that the defendant is guilty of either murder or involuntary manslaughter, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of involuntary manslaughter.

If you have a reasonable doubt as to whether the defendant is guilty of any offense defined in this charge you will acquit the defendant and say by your verdict "Not Guilty."

■ Involuntary manslaughter is, by definition, a lesser included offense of murder. *Lugo v. State*, 667 S.W.2d 144, 147–8 (Tex.Crim.App.1984). In a prosecution for an offense with a lesser included offense, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense. TEX.CODE CRIM. PROC. 37.08 (Vernons 1988). However, a charge on a lesser included offense is not required unless there is conflicting evidence indicating that if guilty, the accused may be guilty of only the lesser included offense. *Royster v. State*, 622 S.W.2d 442 (Tex.Crim.App.1981); *Centamore v. State*, 632 S.W.2d 778, 781 (Tex.App.—Houston [14th Dist.] 1982, no writ). If there is such evidence, the court may submit the lesser included offense, even over defendant's objection. *Humphries v. State*, 615 S.W.2d 737, 738 (Tex.Crim.App.1981).

The court had instructed the jury, in accordance with Sec. 1.07 of the penal code that serious bodily injury was any "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

■ Dr. Espinola testified that hitting another in the head with the butt of a gun was an act clearly dangerous to human life. There was also evidence that appellant intended harm to the deceased by his statement that he was "going to get" decedent and by Soulaire's testimony that appellant just walked up to the deceased and struck him. While this evidence raises an issue of whether appellant would be guilty of murder under the court's charge, it utterly fails to *conclusively prove* that appellant intended to cause serious bodily injury to the deceased. The state argues that where the evidence of appellant's intent is weak, and there is no testimony by appellant that suggests or contradicts that intent, the issue of recklessness is raised by the very evidence that the state introduced to prove intent. We agree. The distinction between murder and involuntary manslaughter, just like the distinction between involuntary manslaughter and criminally negligent homicide, is simply one of degree. *Lugo*, 667 S.W.2d at 147. The jury in this case was required to infer the appellant's

state of mind *through the facts and circumstances surrounding the act itself.* One reasonable inference from this evidence was that appellant intended to cause serious bodily injury to the deceased when he hit him; this inference would support a murder conviction. Another reasonable inference from this evidence was that appellant was aware of, but consciously disregarded, a substantial and unjustifiable risk that by hitting the deceased in the frontal portion of his head with the pistol butt, he would fall backwards, hit his head on the wooden pallets, and suffer a serious injury that would cause death; this inference would support an involuntary manslaughter conviction. Which of these two inferences were correct, *if either,* was a matter for the jury to decide.

In *Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim.App.1978), the court of criminal appeals held that proof of a reckless mental state could be inferred by the trier of fact from the circumstances of the crime, even where one witness stated it was possible that the defendants were unaware of any risk of death to the victim. The *Dillon* case involved two parents of an infant who were charged with murder for the starvation of the baby. They appealed on the grounds that there was insufficient evidence of their mental states. There the court stated:

> The issue is not one of theoretical possibility, but one of whether, given all the circumstances, it is reasonable to infer that the particular individual on trial was in fact aware of the risk. If such an inference is reasonable, it is for the trier of fact to determine which circumstances to accept as proven and whether to draw the inference, and it is not for this Court to overturn such an inference, drawn on the whole of the circumstances, because one witness testified to the possibility that the inference could be false even though soundly supported by the circumstances. Such an approach to the issues of proof of culpable mental states would render the evidence insufficient in all cases, as it is always possible that one's intents are different than what all outward appearances would indicate.

We believe in the instant case that the jury was entitled to infer recklessness from the circumstances surrounding the death; therefore it was not error for the court to submit the issue of involuntary manslaughter. We further point out that appellant neither requested a charge on criminally negligent homicide or any other lesser included offense nor objected to the failure of the court to charge thereon. Finally, the state asserts that even if the charge on voluntary manslaughter was erroneously given, appellant was benefitted by its submission and may not complain of it on appeal. If we reached this contention, it appears *Ex parte Green,* 548 S.W.2d 914, 917 (Tex.Crim.App.1977) supports the state's position. Appellant's first point is overruled.

■ Appellant next contends that the trial court erred in holding the evidence sufficient to prove involuntary manslaughter. In reviewing this case we are bound to view the evidence in the light most favorable to the verdict and to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Houston v. State,* 663 S.W. 2d 455 (Tex.Crim.App.1984). What we have stated above in answer to appellant's first point of error and, especially in light of *Dillon* quoted above, disposes of this point. It is accordingly overruled.

■ In his third point of error appellant contends the court erred in giving the jury, over his objection, the *Allen* charge. While it is not totally clear from the record, it appears that after the jury had been deliberating for approximately eight hours, they reported to the judge that they were unable to unanimously agree upon a verdict. After listening to the lawyers argue for some time, the court instructed the jury:

> If this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the court to declare a mistrial and discharge the jury. The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time.

Any such future jury will be empaneled in the same way this jury has been empaneled and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you, and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.

With this additional information, you are requested to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your conscience. Do not do violence to your conscience, but continue deliberating.

Appellant cites no authority, and we are not aware of any, which has held this type charge to have been erroneously given. To the contrary, the court of criminal appeals has approved the giving of the charge. *Arrevalo v. State*, 489 S.W.2d 569 (Tex.Crim.App.1973). Appellant's third point is overruled.

■ In his fourth point of error appellant contends the trial court erred in failing to grant his motion for mistrial made after the jury had been deliberating some twelve and a half hours. According to the docket sheet, the presentation of testimony consumed some 5 hours, and the jury deliberations covered some 13 hours. In argument under the point appellant recognizes that the length of time a jury may be held for deliberation rests within the discretion of the court. However, he presents no facts or argument upon which a finding of an abuse of discretion could be based, and from our review of the record we fail to discern an abuse of discretion. Appellant's fourth point is overruled.

■ In his fifth point of error appellant contends the trial court commented on the weight of the evidence in the charge to the jury. Appellant's attack is upon that portion of the charge, quoted in the discussion under appellant's first point, where the jury was instructed that if they believed beyond a reasonable doubt that appellant was guilty of either murder or involuntary manslaughter, but they had a reasonable doubt of which offense he is guilty, "then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of involuntary manslaughter." Appellant cites no authority or argument in support of his contention. Furthermore, the charge has long been recognized as proper. *Rochell v. State*, 55 Tex.Crim. 149, 115 S.W. 581 (1909). Appellant's fifth point is overruled.

In his sixth point of error appellant contends the court erred in denying his motion for an instructed verdict of not guilty. What we have said in answer to his first point of error disposes of this contention. Appellant's sixth point is overruled.

The judgment is affirmed.