Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


)
ALFRED MILAM,                                              )                  No. 08-04-00354-CR
)
                                    Appellant,                        )                              Appeal from
)
v.                                                                          )                  384th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20040D01625)
 
O P I N I O N

            Alfred Milam appeals his conviction of manslaughter. A jury found Appellant guilty and
assessed his punishment at a fine of $10,000 and imprisonment for a term of thirteen years. The
judgment includes an affirmative deadly weapon finding. We affirm.
FACTUAL SUMMARY
            On January 15, 2004 at approximately 9:20 a.m., Christopher Trujillo, an El Paso County
Detention Officer, was dispatched by the guard station to check on inmate Jerome Doyle. When
Trujillo arrived at the cell, he saw that Doyle had gathered his mattress and belongings and knew that
Doyle wanted to be moved. Trujillo moved Doyle to a holdover cell. Doyle, who had no visible
injuries, told Trujillo that he had gotten into an argument with other inmates over a jumpsuit but he
did not identify those inmates and he denied being assaulted. Trujillo left Doyle in the holding cell
pending a transfer and he did not see him again until 10:30 a.m. when lunch was served. Trujillo
did not observe Doyle to have any injuries or to be having any problems. At 11:05 a.m., however,
Trujillo saw Doyle holding the right side of his head. Doyle admitted to Trujillo that he had been
assaulted that morning and was now having pain in the top right portion of his head. Trujillo showed
photographs of the inmates to Doyle and he identified three suspects: Oscar Martinez, Jesus Ponce,
and Octavio Casas. According to Doyle, Martinez initiated the assault. Trujillo immediately
notified his sergeant and called the clinic. While the clinic staff were attending to Doyle, he had a
seizure and lost consciousness. 
            Marcus Lott was in the cell next to Doyle and observed the argument between Martinez and
Doyle. Doyle had seen Martinez take another inmate’s jumpsuit and told him to give it back. 
Martinez called Appellant and Casas into the room with Doyle. Both Appellant and Casas struck
Doyle who fought back. Appellant sustained a cut to his forehead as the result of Doyle’s punch. 
A photograph taken of Appellant on the day of the assault depicts a cut on his forehead. According
to Lott, Ponce was not involved in the altercation.
            Doyle’s cellmate, Charles Laday, also witnessed the assault. Laday, who had been asleep,
heard the argument between Doyle and Martinez over the jumpsuit. Martinez left the cell but soon
returned. He left again and returned with Appellant and Casas. As Doyle started to argue with
Martinez, Appellant hit Doyle on the side of the head and face. Doyle responded with a blow to
Appellant’s face. Casas joined in the fight and struck Appellant in the face. Martinez stopped the
fight and instructed Doyle to move to another pod. Laday gave a written statement to Detective
Benjamin Perales on the day of the assault implicating Martinez, Casas, and Appellant. 
            Doyle subsequently died as the result of brain swelling and brainstem herniation caused by
blunt force trauma to the head. The medical examiner, Dr. Corrine Stern, provided an expert opinion
that a significant amount of force was required to cause this type of injury. In her opinion, a hard
blow from a person’s hand to Doyle’s head could have caused the brain swelling resulting in his
death. 
            A grand jury returned a two-count indictment alleging in Count I that Appellant recklessly
caused Doyle’s death by striking him on the head with his hand (manslaughter) and in Count II that
Appellant intentionally, knowingly, or recklessly caused bodily injury to Doyle by striking him about
the head with his hand (aggravated assault). Count II further alleged that Appellant used a deadly
weapon, his hand, during the commission of the assault.


 The trial court’s charge permitted the jury
to find Appellant guilty of Count I and Count II as a primary actor or as a party. The jury found
Appellant guilty of manslaughter and additionally made an affirmative deadly weapon finding. 
FACTUAL SUFFICIENCY
            In Issue One, Appellant challenges the factual sufficiency of the evidence supporting his
conviction. Appellant argues that his conviction is manifestly unjust because it is based on
“incredulous testimony of other inmates . . . which directly contradicts the dying declaration of the
deceased and the testimony of the investigating detectives.” 
Standard of Review
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In Zuniga v.
State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004), the Court of Criminal Appeals clarified the
factual sufficiency standard and linked the appellate standard of review to the beyond a reasonable
doubt burden of proof. There is only one question to be answered in a factual sufficiency review:
Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt
beyond a reasonable doubt? Zuniga, 144 S.W.3d at 484. However, there are two ways in which the
evidence may be insufficient. Id. First, when considered by itself, evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt. Id. Second, there may
be both evidence supporting the verdict and evidence contrary to the verdict. Id. Weighing all the
evidence under this balancing scale, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. 
Id. at 485. This standard acknowledges that evidence of guilt can “preponderate” in favor of
conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. 
Id. Stated another way, evidence supporting guilt can “outweigh” the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard. Id. In performing this review,
we are to give due deference to the jury verdict, as well as to determinations involving the credibility
and demeanor of witnesses. Zuniga, 144 S.W.3d at 481.
Review of the Evidence
            Doyle identified three individuals as being involved in the assault: Martinez, Casas, and
Ponce. Detective Michael Lara investigated the assault on Doyle and interviewed all of the inmates
assigned to Doyle’s pod. He determined that there was no evidence, other than Doyle’s
identification, that Ponce was involved in the assault. Two inmates, Lott and Laday, identified
Appellant as one of Doyle’s assailants, and both testified that Ponce was not involved in the assault. 
            Appellant contends that the testimony of Lott and Laday was motivated by a desire to clear
Martinez, the “tank boss,” due to fear of reprisal. Lott, who was on probation at the time of trial,
admitted that he was worried about testifying if he were ever sent back to prison but he denied being
afraid of Appellant. Laday denied being afraid to testify. Appellant does not explain how the
witnesses’ alleged fear of Martinez would lead them to exculpate Ponce and falsely identify
Appellant as one of the assailants.
            Appellant points to other evidence regarding Laday’s credibility. Appellant’s mother,
Patricia Milam, testified that in February of 2004, Laday told her that he would testify for the defense
in exchange for a deal. Laday denied Mrs. Milam’s claim. While this evidence cuts against Laday’s
credibility, other evidence supports it. The evidence at trial showed that Laday gave a statement to
Detective Perales on the day of the assault implicating Appellant. That written statement is
consistent with Laday’s trial testimony in that it reflected he was awakened by an argument between
Martinez and Doyle over a jumpsuit; when Martinez snapped his finger, Casas and Appellant went
over to Doyle and began striking him; Appellant hit Doyle on the head with a closed fist; Doyle
punched Appellant and caused a cut on his forehead; and Martinez instructed Doyle to leave the pod. 
            Laday’s testimony describing the assault was similar to Lott’s and Lott’s testimony that
Doyle struck Appellant’s forehead causing an injury is consistent with the physical evidence. A
photograph taken of Appellant on the day of the assault depicts a cut on his forehead. 
            It was the jury’s task to review the credibility of all the witnesses and determine the weight
to be given their testimony. See Goodman v. State, 66 S.W.3d 283, 285-86 (Tex.Crim.App. 2001);
Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996). The jury was free to believe the
testimony of Lott and Laday while rejecting that of Mrs. Milam. It cannot be said that the evidence 
supporting the verdict is too weak to support the finding of guilt. We also are unable to conclude
that the contrary evidence is so strong that the beyond a reasonable doubt standard could not have
been met. Accordingly, we conclude that the jury was rationally justified in finding Appellant guilty
of manslaughter. Issue One is overruled.
EXTRANEOUS OFFENSES
            In Issue Two, Appellant asserts that the trial court abused its discretion by admitting
extraneous offense evidence at the punishment phase because the notice provided to him was
inadequate. We review the trial court’s decision to admit extraneous offense evidence during the
punishment phase of a trial under an abuse of discretion standard. Mitchell v. State, 931 S.W.2d 950,
953 (Tex.Crim.App. 1996).
            During punishment, the State may offer evidence as to any matter the court deems relevant
to sentencing, including but not limited to the prior criminal record of the defendant, and,
notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, any other evidence of an
extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been
committed by the defendant or for which he could be held criminally responsible, regardless of
whether he has previously been charged with or finally convicted of the crime or act. Tex.Code
Crim.Proc.Ann. art. 37.07, § 3(a)(Vernon Pamph. 2005). The State, on timely request by the
defendant, must give reasonable notice of extraneous crimes or bad acts that the State intends to
introduce during the punishment phase. Tex.Code Crim.Proc.Ann. art. 37.07, § 3(g). To be
reasonable, the State’s notice must be given in advance of trial and must include the date on which
and the county in which the alleged offense occurred and the complainant’s name. Tex.Code
Crim.Proc.Ann. art. 37.07, § 3(g). The purpose of reasonable notice is to allow the defendant
adequate time to prepare for the State’s introduction of the extraneous offenses at trial. Scott v.
State, 57 S.W.3d 476, 480 (Tex.App.--Waco 2001, pet. ref’d); Self v. State, 860 S.W.2d 261, 264
(Tex.App.--Fort Worth 1993, pet. ref’d). This avoids unfair surprise and trial by ambush. Nance
v. State, 946 S.W.2d 490, 493 (Tex.App.--Fort Worth 1997, pet. ref’d). The reasonableness of the
notice turns on the facts and circumstances of each case. Scott, 57 S.W.3d at 480.
            The notice filed by the State had the correct style (The State of Texas v. Alfred Milam) and
cause number, but the body of the notice stated as follows:
The State may introduce evidence of any and all extraneous offenses committed by
the defendant, RICHARD BROWN, and appearing in the State’s file and on the
defendant’s Rap Sheet, both previously made available to the defendant’s attorney
through the State’s open file policy. 

The notice went on to list numerous extraneous offenses allegedly committed by Appellant between
1997 and 2003 in El Paso County and the names of the complaining witnesses. Because the quoted
portion erroneously stated the defendant’s name as “Richard Brown,” Appellant contended that the
notice was defective. The prosecutor responded that Appellant had received actual notice of its
intent to introduce these extraneous offenses and he had been provided with a witness list concerning
who would testify about the extraneous offenses. Additionally, Appellant’s attorney had been given
access to the State’s file which contained all of these extraneous offenses. The prosecutor noted that
Appellant could not claim surprise because defense counsel had discussed with her whether the
criminal mischiefs listed in the extraneous offense notice involved the electric company. Finding
that Appellant had received adequate notice, the trial court overruled the objection. 
            Appellant did not claim, even when asked directly by the trial court, that he was surprised
by the State’s intent to introduce the extraneous offense and bad act evidence covered by the notice. 
Nor is there evidence that Appellant was unprepared for the introduction of this evidence. We
conclude that the notice substantially complied with the requirements of Article 37.07, § 3(g) and
did not place Appellant in the position of being unfairly surprised. See Nance, 946 S.W.2d at 493
(finding no surprise where notice substantially complied with Article 37.07, § 3(g)). Finding no
abuse of discretion, we overrule Issue Two.
LEGAL SUFFICIENCY
            In Issue Three, Appellant argues that the evidence is legally insufficient to support his
conviction. More specifically, he argues that the evidence does not support the jury’s finding that
he acted recklessly, that is, that he consciously disregarded a substantial and unjustifiable risk that
his actions would cause Doyle’s death. Additionally, he argues that the evidence did not establish
that his conduct caused Doyle’s death.
Standard of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). We do not resolve any
conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do
so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d
839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a
light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies
in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843. The standard of
review is the same for both direct and circumstantial evidence cases. Geesa, 820 S.W.2d at 158.
Recklessness
            A person commits manslaughter if he recklessly causes the death of an individual. 
Tex.Penal Code Ann. § 19.04 (Vernon 2003). A person acts recklessly, or is reckless, with respect 
to circumstances surrounding his conduct or the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result
will occur. Tex.Penal Code Ann. § 6.03(c)(Vernon 2003). The risk must be of such a nature and
degree that its disregard constitutes a gross deviation from the standard of care that an ordinary
person would exercise under all the circumstances as viewed from the actor’s standpoint. Id.             Proof of a culpable mental state generally relies upon circumstantial evidence. Dillon v.
State, 574 S.W.2d 92, 94 (Tex.Crim.App. 1978); Todd v. State, 911 S.W.2d 807, 815 (Tex.App.--El
Paso 1995, no pet.). Ordinarily, it must be inferred from the acts, words, and conduct of the accused
and the surrounding circumstances. Ledesma v. State, 677 S.W.2d 529, 531 (Tex.Crim.App. 1984);
Todd, 911 S.W.2d at 815. 
            Before examining the evidence, we must consider Appellant’s argument that the standard of
care for inmates is different because violence is common in penal institutions and inmates face
greater danger than citizens who are not detained. We reject this argument for several reasons. First,
Appellant does not direct our attention to any evidence in the record regarding the level of violence
in this particular facility. Second, there is no evidence that Appellant struck Doyle as a matter of
self-defense. To the contrary, the evidence showed that Appellant attacked Doyle without
provocation. Finally, we decline Appellant’s invitation to hold inmates to a lesser standard of care
because doing so would result in more, not less violence.
            Taken in the light most favorable to the verdict, the evidence showed that both Appellant and
Casas approached Appellant as he argued with Martinez about the jumpsuit. Although Doyle did
not do anything to provoke an attack by either man, Appellant struck Doyle with a closed fist on the
side of the head and Casas joined in the attack. This evidence is legally sufficient to permit an
inference by the jury that Appellant was aware of, but consciously disregarded, a substantial and
unjustifiable risk that striking Appellant on the side of the head with a closed fist could result in an
injury that would cause death. See Willis v. State, 761 S.W.2d 434, 437 (Tex.App.--Houston [14th
Dist.] 1988, pet. ref’d)(where evidence showed that defendant struck victim in head with butt of gun
causing victim to fall and hit head, evidence supported inference that the defendant was aware of,
but consciously disregarded, a substantial and unjustifiable risk that by hitting deceased in head with
butt of gun, he would fall backwards, hit his head, and suffer a serious injury that would cause
death). 
Cause of Death
            Characterizing Doyle’s death as a freak occurrence, Appellant next argues that the evidence
is legally insufficient to establish that a single blow from Appellant’s fist could have caused Doyle’s
death. Dr. Stern testified that a single, hard blow from a closed fist could cause the brain injury
which led to Doyle’s death. From this evidence, a rational trier of fact could conclude that Appellant
caused Doyle’s death by hitting him on the head with his fist. Issue Three is overruled.
Deadly Weapon Finding
            Appellant also challenges the legal sufficiency of the evidence supporting the jury’s finding
that Appellant used or exhibited a deadly weapon, namely, his hand, during the commission of the
offense. A deadly weapon is anything manifestly designed, made, or adapted for the purposes of
inflicting serious bodily injury or anything that, in the manner of its use or intended use, is capable
of causing death or serious bodily injury. Tex.Penal Code Ann. § 1.07(a)(17)(A), (B)(Vernon
Supp. 2005). A fist or hand is not a deadly weapon per se, but it can become a deadly weapon in the
manner used depending upon the evidence shown. Lane v. State, 151 S.W.3d 188, 191
(Tex.Crim.App. 2004); Turner v. State, 664 S.W.2d 86, 90 (Tex.Crim.App. 1983). Therefore, the
hand could become a deadly weapon if in the manner of use, it is capable of causing death or serious
bodily injury. Lane, 151 S.W.3d at 191; Turner, 664 S.W.2d at 90. Any injuries inflicted on the
victim are factors to be considered in determining whether a hand or a foot was used as a deadly
weapon. Lane, 151 S.W.3d at 191; Turner, 664 S.W.2d at 90. To determine whether something is
a deadly weapon, the jury may consider all the surrounding facts. Blain v. State, 647 S.W.2d 293,
294 (Tex.Crim.App. 1983).
            The evidence showing that Appellant struck Doyle in the head with a closed fist, when
combined with Dr. Stern’s expert testimony that Doyle’s brain injury was consistent with being
struck in the head by a hard blow from a fist, and her expert testimony that a hand can be a deadly
weapon in the manner of its use and intended use, is legally sufficient to support the deadly weapon
finding. Issue Three is overruled.
UNANIMOUS VERDICT
            In his final issue, Appellant contends that the court’s charge is erroneous because it did not
require a unanimous jury verdict. The pertinent portion of the charge reads as follows:
 

Now if you find from the evidence beyond a reasonable doubt that on or about 15th
day of January, 2004, in El Paso County, Texas, the defendant Alfred Milam,
individually, did then and there recklessly cause the death of an individual, namely,
Jerome Doyle, by striking Jerome Doyle about the head with the defendant’s hand,
thereby causing the death of the said Jerome Doyle and the said Alfred Milam was
then and there aware of but consciously disregarded the substantial or unjustifiable
risk that said circumstances existed and said result would occur, and said risk was of
such nature and degree that its disregard constituted a gross deviation from the
standard of care that an ordinary person would exercise under all the circumstances
as viewed from the standpoint of the said Alfred Milam, then you will find the
defendant, Alfred Milam, guilty of manslaughter, Count I, as charged in the
indictment. (Verdict Form B); or
 
If you find from the evidence beyond a reasonable doubt that at the said time and
place referred to above, Oscar Martinez, Octavio Casas or Jesus Ponce, individually
or as parties, as that term has been defined herein, did then and there recklessly cause
the death of an individual namely, Jerome Doyle, by striking Jerome Doyle about the
head with a hand, thereby causing the death of the said Jerome Doyle and that Alfred
Milam, did [then] and there, with intent to promote or assist the commission of the
offense of manslaughter, if any, of Jerome Doyle by Oscar Martinez, Octavio Casas
or Jesus Ponce, solicit, encourage, direct, aid or attempt to aid Oscar Martinez,
Octavio Casas or Jesus Ponce, in the commission of said offense, if any, then you
will find the defendant, Alfred Milam, guilty as charged (Verdict Form B). 

The jury found Appellant guilty and signed Verdict Form B. Appellant contends that the use of the
disjunctive “or” when referring to Martinez, Casas, and Ponce in the second paragraph’s party charge
allowed the jury to convict him of manslaughter without unanimously agreeing on each element. 
Appellant did not, however, raise this objection in the trial court.
Standard of Review
            When reviewing charge error, we employ a two-step analysis. Washington v. State, 930
S.W.2d 695, 698 (Tex.App.--El Paso 1996, no pet.). We must first determine whether error actually
exists in the charge. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984); Washington,
930 S.W.2d at 698. In making this determination, we view the charge as a whole and our review is
not limited to a series of isolated statements or portions of the charge standing alone. Washington,
930 S.W.2d at 698; see Holley v. State, 766 S.W.2d 254, 256 (Tex.Crim.App. 1989). Second, we
must determine whether sufficient harm resulted from the error so as to require reversal. Almanza,
686 S.W.2d at 171; Washington, 930 S.W.2d at 698. Which harmless error standard applies depends
upon whether the defendant objected. Abdnor v. State, 871 S.W.2d 726, 731-32 (Tex.Crim.App.
1994); Washington, 930 S.W.2d at 698. Where, as here, the defendant failed to object, he must show
that he suffered actual egregious harm. Almanza, 686 S.W.2d at 171; Washington, 930 S.W.2d at
698. Where there has been a timely objection made at trial an appellate court will search only for
“some harm.” Abdnor, 871 S.W.2d at 732; Almanza, 686 S.W.2d at 171. Under Almanza, we
examine the error in light of (1) the entire jury charge, (2) the state of the evidence, including the
contested issues and the weight of the probative evidence, (3) the arguments of counsel, and (4) any
other relevant information. Almanza, 686 S.W.2d at 171.
A Disjunctive Jury Charge 
            Jury unanimity is required in felony cases. Tex.Const. art. V, § 13; Tex.Code Crim.Proc.
Ann. arts. 36.29(a), 37.02, 45.034-45.036 (Vernon Pamph. 2005); Tex.Code Crim.Proc.Ann. art.
37.03 (Vernon 1981). In this context, unanimity means that each and every juror agrees that the
defendant committed the same, single, specific criminal act. Ngo v. State, 175 S.W.3d 738, 745
(Tex.Crim.App. 2005). In reviewing a disjunctive jury charge, we first determine whether the
application paragraphs contain different criminal acts or whether they merely instruct as to different
means of committing a single offense. Holford v. State, 177 S.W.3d 454 (Tex.App.--Houston [1st
Dist.] 2005, pet. ref’d). If the disjunctive paragraphs contain different criminal acts, then the jury
must be instructed that it cannot return a guilty verdict unless it agrees unanimously that the
defendant committed one of the acts. Holford, 177 S.W.3d at 461, citing Ngo, 175 S.W.3d at 744
(holding that because defendant was charged with three different criminal acts of credit card abuse,
jury had to unanimously agree that defendant did at least one of three different things: steal the credit
card, knowingly receive the stolen credit card, or fraudulently present stolen credit card with intent
to obtain benefit). But if the disjunctive paragraphs merely inform the jury of different means of
committing a single offense, then the jury does not have to unanimously agree on which alternative
means the defendant used to commit the offense. Holford, 177 S.W.3d at 462, citing Kitchens v.
State, 823 S.W.2d 256, 258 (Tex.Crim.App. 1991).
            The court’s charge does not authorize the jury to convict Appellant of different criminal acts
but instead informs the jury of different means of committing a single manslaughter offense by
determining whether Appellant, acting with intent to promote or assist the commission of the offense
of manslaughter, solicited, encouraged, directed, aided or attempted to aid one or more of the named
parties in committing the single manslaughter offense. Issue Four is overruled. Having overruled
each issue, we affirm the judgment of the trial court.

February 9, 2006                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)