Affirmed and Opinion filed January 25, 2011.

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00180-CR



 

Reynaldo Dwayne Draper, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 240th
District Court

Fort Bend County, Texas

Trial Court Cause No. 50076A



 

OPINION

 

Appellant Reynaldo Dwayne Draper was indicted for
murder.  See Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).  A jury
found him guilty as alleged in the indictment, sentenced him to imprisonment
for 75 years, and assessed a $10,000 fine.  See id. §§ 12.32;
12.42(c)(1) (Vernon 2003).  We affirm.

BACKGROUND

Appellant invited several friends to a birthday party
in his honor at a local bar.  After the bar closed and the party ended,
appellant and his friends stayed behind to talk in the parking lot.  The
complainant, who was not a part of appellant’s group, stood nearby.  The
complainant made a comment about appellant’s friend, who was dancing on a parked
car.  After a brief conversation between appellant and the complainant, the
complainant turned to get into his car.  Witnesses testified that appellant
pulled out a firearm, shot at the complainant from behind, and fired several
more shots at the complainant after he fell to the ground.  Appellant fled, and
the complainant died at the scene.  An autopsy revealed that the complainant sustained
nine entrance and two exit gunshot wounds.

The jury found appellant guilty of murder as alleged
in the indictment.  See Tex. Penal Code Ann. § 19.02(b).  Appellant
pleaded true to the enhancement paragraph, and the jury sentenced appellant to
imprisonment for 75 years and assessed a $10,000 fine.  See Tex. Penal
Code Ann. §§ 12.32, 12.42(c)(1).  Appellant argues on appeal that (1) the
evidence is legally and factually insufficient to support his conviction; and
(2) the trial court erred in denying a motion for mistrial appellant filed during
the punishment phase of the trial.

ANALYSIS

I.         Sufficiency of
the Evidence

In his first two issues, appellant argues that the
evidence is insufficient to support his
conviction because (1) the State’s witness Kimberly “Precious” Alexander contradicted
herself at trial and admitted to being on ecstasy when giving her initial
statement to police; and (2) the State’s witness Leonard Poke was an “unreliable”
witness.  Appellant additionally claims that the record contains no evidence of
his intent to commit murder in the absence of this allegedly inconsistent and
unreliable testimony.

We address appellant’s
sufficiency challenges under a single standard for evaluating legal sufficiency
of the evidence to support a finding required to be proven beyond a reasonable
doubt.  See Brooks v. State, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010)
(plurality opinion) (appropriate standard of review for sufficiency of the
evidence considers all evidence “in the light most favorable to the verdict” to
determine whether a jury was “rationally justified in finding guilt beyond a
reasonable doubt”); id. at 914 (Cochran, J., concurring) (concluding
that a separate factual sufficiency standard no longer applies in criminal
cases); Romero v. State, No. 14-09-01035-CR, 2010 WL 4880274, at *1
(Tex. App.—Houston [14th Dist.] Dec. 2, 2010, no pet. h.).

The jury was
instructed: “A person commits the offense of murder if, he intentionally or knowingly
causes the death of an individual or a person commits the offense of murder if
he intends to cause serious bodily injury and commits an act clearly dangerous
to human life that causes the death of an individual.”  See Tex. Penal
Code Ann. § 19.02(b)(1), (2).  The jury found appellant guilty of murder.  See
id.    

Alexander testified
that she saw a friend hand appellant something “shiny” right before the shots
rang out, and that appellant later admitted to her that he shot the
complainant.  Poke testified that he saw appellant point a “shiny” firearm at
the victim from behind, fire the gun, and shoot the complainant at least four
or five more times while he was on the ground.  Detective Mike Miller and
Officer Jose Pena of the Houston Police Department both testified that physical
evidence at the crime scene was consistent with Alexander’s and Poke’s version
of events.  Bar owner Roland “Free” Tasso testified that when he rushed to the
parking lot after he heard gunshots, he bumped into appellant quickly walking
away from the area where the complainant was shot.  The medical examiner
testified that the complainant suffered from nine gunshot entrance wounds,
three of which would have been fatal; she also testified that one of the wounds
was a contact wound received from a gun fired less than half an inch away.  

Jarvis Atkins
testified that he saw appellant moments after he heard the gunshots, and that
appellant did not have a gun.  He testified that appellant was wearing
tight-fitting clothes the night of the shooting, making it impossible to hide a
gun on his person.  

Appellant asserts that
Alexander’s trial testimony was inconsistent.  The complainant was shot and
killed in front of the building, away from the side of the building where Alexander
testified she was standing when she heard the gunshots.  Alexander testified
that she originally told police that appellant was in front of the building when
she heard the gunshots; however, she made statements to a private investigator
and testified at trial that appellant was standing next to her at that time. 
She also testified that she was on ecstasy when she first told the police that
appellant was the shooter.  She admitted that she told defense counsel before
trial that she lied to police.  She testified that what she told police was the
truth, then testified that it was not the truth.  She testified that the police
instructed her on what to say in her first statement, and told her that she
would be put in jail and her children would be removed by CPS because she “knew
what happened.”  To explain her inconsistencies, she testified that she had
been threatened by friends of appellant, and she was afraid if she were to “say
something then me and my kids are going to be gone” and that “somebody will do
something to us.”

Appellant claims that
Poke was an “unreliable” witness because his initial statements to police and
to a private investigator indicated that appellant first shot the complainant
in the back of the head.  The evidence at trial showed that the complainant
suffered no gunshot wounds to the head.  Poke testified at trial that he could
not remember if he initially told police and a private investigator that
appellant first shot the complainant in the back of the head.  He testified
that “it looked like the back of the head, you know what I’m saying?”  

Any alleged
inconsistencies in the witnesses’ testimony concern the credibility and weight
to be given certain testimony.  See Lancon v. State, 253 S.W.3d 699,
705–07 (Tex. Crim. App. 2008).  The jury is the exclusive judge of the
credibility of the witnesses and of the weight to be given testimony.  Herrero
v. State, 124 S.W.3d 827, 833 (Tex. App.—Houston [14th Dist.] 2003, no
pet.) (citing Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979), and Garcia
v. State, 919 S.W.2d 370, 382 n.6 (Tex. Crim. App. 1996) (per curiam)).  We
resolve inconsistencies in testimony in favor of the jury’s verdict.  Id.
(citing Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).  On
this record, the jury was rationally justified in concluding that appellant was
guilty of murder beyond a reasonable doubt.  See Brooks, 323 S.W.3d at 902.
     

Moreover, appellant’s
contention that the record does not contain evidence of intent beyond the
allegedly inconsistent testimony is without merit.  A person acts intentionally
“when it is his conscious objective or desire to . . . cause the result; a
person acts knowingly “when he is aware that his conduct is reasonably certain
to cause the result.”  Tex. Pen. Code Ann. § 6.03(a), (b) (Vernon 2003). 
Additionally:

[I]t has long
been held the intent of a defendant may be ascertained or inferred from the
means used and the wounds inflicted.  Intent to commit murder may be shown by
the use of a deadly weapon per se.  In fact, where a deadly weapon is fired at
close range and death results, the law presumes an intent to kill.

Womble v. State, 618 S.W.2d 59,
64 (Tex. Crim. App. 1981) (citations omitted).  Testimony at trial showed that
appellant used a deadly weapon — a firearm — at close range to shoot and kill
the victim.  See Tex. Pen. Code Ann. § 1.07 (17)(A) (Vernon 2003).  The jury
was entitled to infer appellant’s intent from this evidence.  Womble,
618 S.W.2d at 64.  

We overrule
appellant’s first two issues.

II.        Motion for
Mistrial

Appellant argues in his third issue that the trial
court erred in not granting his motion for mistrial during the punishment phase
because (1) the jury indicated that it was hopelessly deadlocked; and (2) the Allen
charge directing the jury to continue deliberating was coercive.  See Allen
v. United States, 164 U.S. 492, 501 (1896).  We disagree.

The trial court received three notes from the jury
during its deliberations on punishment:

Jury Note 1 at 11:10 a.m.:  We need a clarification
on the terms 99 years or life.  Are these equal or different?  If so, what are
the differences?

Response at 11:14 a.m.:  I cannot answer this
question.  Please refer to the charge and continue your deliberations.


Jury Note 2 at 2:46 p.m.:  We need to know what will result if we cannot
reach an agreement.

Response at 3:02 p.m.:  I cannot answer this
question.  Please refer to the charge and continue your deliberations.


Jury Note 3 at 6:35 p.m.:  We are 11-1 after 7 hours.  We have one juror
that will not move or listen to the other jurors because he/she doesn’t feel
that the evidence presented by the prosecution (amount of time taken/quality of
the case presented) is enough to change his decision.  This juror has made it
clear that the defendant is guilty.  On multiple occasions yet he/she has
stated he/she wants to “make a point” to the prosecution.  Additional comments
made regarding his decision “This is not about Renaldo [sic] Draper.”

Appellant moved for a mistrial, arguing that the note
indicated that the jury was hopelessly deadlocked.  See Tex. Code Crim.
Proc. Ann. art. 36.31 (Vernon 2006).  The trial court denied appellant’s motion
and proposed that the jury be given an Allen charge.  Appellant objected
to the trial court’s proposed Allen charge, claiming it was coercive
because it implied that the entire case, rather than just the punishment phase,
would have to be retried if the jury did not reach a unanimous decision on
punishment.  The trial court overruled appellant’s objection and gave the Allen
charge to the jury.  

A.               
Deadlock

After a case is submitted to the jury, the court may,
in its discretion, discharge the jury and declare a mistrial where it has
deliberated so long that it becomes altogether improbable that it will agree.  See
id.  However, there is no limit on the length of time a jury may
deliberate.  Melancon v. State, 66 S.W.3d 375, 383 (Tex. App.—Houston
[14th Dist.] 2001, pet. ref’d) (op. on reh’g) (en banc) (citing Guidry v.
State, 9 S.W.3d 133, 155 (Tex. Crim. App. 1999)).  Reversal is mandated
only if the record reveals that the trial court abused its discretion by
holding the jury for deliberations.  Id. (citing Jackson v. State,
17 S.W.3d 664, 676 (Tex. Crim. App. 2000)).  

According to the trial court’s docket sheet, the guilt-innocence
phase of the trial lasted approximately 10–12 hours, and the punishment phase
lasted an additional four to five hours.  The jury heard from 17 witnesses and
was given 43 exhibits to review.  The jury had been deliberating more than
seven hours when it sent its third note to the trial court.  Following the
trial court’s Allen charge, no other notes were sent to the trial court
by the jury until it rendered its unanimous verdict.  

We conclude on this record that the trial court did
not abuse its discretion in denying appellant’s motion for mistrial and giving
an Allen charge to encourage further deliberation after seven hours of
deliberation on punishment.  See, e.g., Page v. State, 819 S.W.2d
883, 885–86 (Tex. App.—Houston [14th Dist.] 1991, pet. ref’d) (no abuse of
discretion in denying motion for mistrial when jury reported deadlock after
three hours of deliberation following 30-minute punishment trial); Goods v.
State, No. 14-97-01285-CR, 1999 WL 548265, at *3–4 (Tex. App.—Houston [14th
Dist.] July 29, 1999, pet. ref’d) (not designated for publication) (no abuse of
discretion in denying motion for mistrial when jury reported deadlock after
five hours of deliberation following two-hour trial); see also Melancon,
66 S.W.3d at 383–84 (no abuse of discretion in ordering jury to continue
deliberating when it reported deadlock after four and a half hours in
aggravated robbery trial); Matthews v. State, 691 S.W.2d 2, 5 (Tex.
App.—Beaumont 1984), aff’d, 708 S.W.2d 835 (Tex. Crim. App. 1986) (no
abuse of discretion in denying motion for mistrial when jury reported deadlock
after ten hours of deliberation following trial with 17 witnesses, 49 exhibits,
and multiple issues for the jury to resolve); Moses v. State, No.
14-99-00377-CR, 2004 WL 78162, at *1 (Tex. App.—Houston [14th Dist.] Jan. 20,
2004, no pet.) (mem. op., not designated for publication) (no abuse of
discretion in denying motion for mistrial when jury reported deadlock after
eight hours of deliberation following 4.5-hour trial).  Accordingly, the trial
court acted within its discretion in denying appellant’s motion for mistrial
based on the jury’s reported deadlock.   

B.        Allen Charge

Appellant complains that the Allen charge was
coercive because it suggested that the entire case, rather than just the
punishment phase, would have to be retried if the jury did not reach a
unanimous decision on punishment.  See Tex. Code Crim. Pro. Ann. art
37.07 § 3(c) (Vernon 2006).  

An Allen charge is designed to foster debate
and circumvent a mistrial after a jury has indicated that it is deadlocked.  Allen,
164 U.S. at 501–02.  The trial court gave the following instruction in response
to the jury’s third note:

If this jury finds itself unable
to arrive at a unanimous verdict, it will be necessary for the Court to declare
a mistrial and discharge the jury.

This indictment will still be
pending, and it is reasonable to assume that the case will be tried again before
another jury at some future time.  Any such future jury will be empanelled in
the same way this jury has been empanelled and will likely hear the same
evidence which has been presented to this jury.  The questions to be determined
by that jury will be the same questions confronting you and there is no reason
to hope the next jury will find these questions any easier to decide than you
have found them.  

With this
additional instruction, you are instructed to continue deliberations in an
effort to arrive at a verdict that is acceptable to all members of the jury if
you can do so without doing violence to your conscience.

This court and the Court of Criminal Appeals have
approved Allen charges containing almost identical language.  See,
e.g., Arrevalo v. State, 489 S.W.2d 569, 570–72 (Tex. Crim. App.
1973); Willis v. State, 761 S.W.2d 434, 437–38 (Tex. App.—Houston [14th
Dist.] 1998, pet. ref’d).

Additionally, the trial court’s charge is not
misleading as to whether the entire case, rather than just the issue of
punishment, would have to be retried in the event of a mistrial.  The charge
states: “The questions to be determined by that jury will be the same questions
confronting you . . . .”  The only question confronting the jury at that time
was appellant’s punishment; the jury had already decided his guilt.  The
initial charge given to the jury expressly states: “By your verdict in this
case you have found the defendant guilty of the offense of Murder . . . .  It
is necessary now that the jury assess and fix the punishment for this
offense.”  There is nothing in the record to suggest that the jury disregarded
or was confused by these instructions.  See Resendiz v. State, 112
S.W.3d 541, 546 (Tex. Crim. App. 2003) (we presume jury followed trial court’s
instructions absent evidence to the contrary); Williams v. State, 937
S.W.2d 479, 490 (Tex. Crim. App. 1996) (“[W]e assume that the jury would follow
the instructions as given, and we will not reverse in the absence of evidence
that the jury was actually confused by the charge.”). 

This court and the Austin Court of Appeals have
approved similar Allen charges for use in the punishment phase of a
trial.  See Deaton v. State, No. 03-08-00455-CR, 2009 WL 1811068, at *8–11
(Tex. App.—Austin June 26, 2009, pet. ref’d) (mem. op., not designated for
publication); Hairston v. State, No. 14-04-01016-CR, 2006 WL 1026880, at
*2–3 (Tex. App.—Houston [14th Dist.] Apr. 20, 2006, pet. ref’d) (mem. op., not
designated for publication).  Both decisions relied on the Court of Criminal
Appeals’s rationale in Howard v. State, 941 S.W.2d 102 (Tex. Crim. App.
1996).  The Allen charge at issue in Howard was given during the
punishment phase of a capital murder case; the charge failed to inform the
jurors that if they failed to reach an agreement on punishment, the trial court
was statutorily bound to impose a life sentence.  See Howard, 941 S.W.2d
at 123–24; see also Tex. Crim. Pro. Code Ann. art. 37.071 § 2(g) (Vernon
2006).  The Court of Criminal Appeals disagreed with the defendant’s argument
that such a charge was coercive because the jury might erroneously conclude
that failure to agree would result in an entirely new trial.  Id.

In applying the rationale of Howard to analyze
the same Allen charge problem raised here, Deaton held:

Although Howard
was a capital case, we believe the reasoning in Howard is also
applicable to non-capital cases such as this one.  Whether the result of jury
deadlock is the automatic imposition of a life sentence or a new trial on
punishment, the failure of a jury to reach an agreement on a verdict is not a
favored outcome. . . .  Including language in the charge to the effect that a
mistrial would be “as to punishment only,” particularly after deliberations
have become difficult, could “‘effectively negate the ‘coercive’ nature of an Allen
charge and encourage jurors to discontinue deliberation, contradicting the
thrust of the supplemental charge.” 

Deaton, 2009 WL
1811068, at *10–11 (quoting Howard, 941 S.W.2d at 125).  We agree with
this reasoning and similarly hold that the trial court did not err in giving
the same Allen charge in appellant’s case.

The trial court acted within its discretion in
overruling appellant’s complaint about the Allen charge and denying
appellant’s motion for mistrial.  We overrule appellant’s third issue.

CONCLUSION

Because we overrule all of appellant’s issues on
appeal, we affirm the judgment of the trial court.








                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Seymore,
Boyce, and Christopher.

Publish
— Tex. R. App. P. 47.2(b).